### UNITED STATES v. KING COUNTY, WASH., et al.

(Circuit Court of Appeals, Ninth Circuit. July 3, 1922.)

No. 3790.

Taxation ⚖️18—County operating ferry held not liable for government transportation tax.

A county of the state of Washington, operating a ferry under Laws Wash. 1895, p. 341, § 2, and Laws Wash. 1899, p. 39, § 1 (Rem. Code 1915, § 5013), was not required to collect and pay over to the government transportation tax, under Revenue Act 1917, §§ 500, 501, 503, and Revenue Act 1918, § 500 et seq. (Comp. St. Ann. Supp. 1919, § 6309⅛a et seq.), since the maintenance and operation of the ferry by the county was the exercise of a strictly governmental function, protected against taxation by the federal Constitution.

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States, for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by the United States against King County, Wash., a municipal corporation, and others. Judgment for defendants, and the United States brings error. Affirmed.

Thomas P. Revelle, U. S. Atty., and John A. Frater, Asst. U. S. Atty., both of Seattle, Wash. (Carl A. Mapes, Sol. of Internal Revenue, of Washington, D. C., and Robert M. Foster, Sp. Atty., Bureau of Internal Revenue, of counsel), for the United States.

Malcolm Douglas and Howard A. Hanson, both of Seattle, Wash., and L. L. Thompson, Atty. Gen. of Washington, for defendants in error.

Before ROSS, MORROW, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The court below having sustained a demurrer to the complaint as amended and given judgment accordingly, the sole question here is as to the sufficiency of the plaintiff in error's pleading. The action was brought to recover of King county, state of Washington, and its officers, a transportation tax on account of moneys paid to them for the transportation of freight and passengers on certain ferryboats maintained and operated by the county.

A statute of the state of Washington authorized any county within the state to, among other things—

"operate and maintain a ferry across or wharf at any unfordable stream, lake, estuary or bay within or bordering on said county, together with all the necessary boats, grounds, roads, approaches and landings necessary or appertaining thereto, with full jurisdiction and authority to operate and maintain the same free or for toll, by and under the direction and control of the board of county commissioners of such county and as said board shall by resolution determine." Laws Wash. 1895, p. 341, § 2; Laws Wash. 1899, p. 39, § 1; Remington's Code Wash. 1915, § 5013.

By section 500 of the United States Revenue Act of 1917 (40 Stat. 314) it was, among other things, provided that from and after November 1, 1917, there should be—

"levied, assessed, collected, and paid a tax equivalent to three per centum of the amount paid for the transportation by rail or water * * * when in competition with carriers by rail or water of property by freight consigned from one point in the United States to another, * * * and a tax equivalent to eight per centum of the amount paid for the transportation of persons by rail or water * * * on a regular established line when in competition with carriers by rail or water from one point in the United States to another, or to any point in Canada or Mexico, where the ticket therefor is sold or issued in the United States, not including the amount paid for commutation or season tickets for trips less than thirty miles, or for transportation the fare for which does not exceed 35 cents, and a tax equivalent to ten per centum of the amount paid for seats, berths and staterooms * * * on vessels. * * * *"

The next section provided that the taxes imposed by section 500 should be paid by the person, corporation, partnership, or association paying for the services or facilities rendered. A similar requirement is made by section 501(a) of the Revenue Act of 1918 (Comp. St. Ann.

Supp. 1919, § 6309⅓b). By section 503 it is provided, among other things, that every person, corporation, partnership, or association, receiving any payments referred to in section 500, should collect the amount of the tax so imposed and should make monthly returns under oath in duplicate and pay the same to the collector of internal revenue of the district in which the principal office or place of business is located. By section 500 et seq. of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6309⅓a et seq.) the rates levied, assessed, and to be collected and paid after April 1, 1919, were increased, but with similar provisions in other respects, in so far as concerns the present case, as specified in the act of 1917.

Two contentions are made on behalf of the plaintiff in error: First, that the maintenance and operation of the ferries by the municipality was and is an ordinary business enterprise, as distinguished from a strictly governmental function, which latter (it is practically conceded) is protected by the federal Constitution against taxation; and, secondly, that if it be conceded that the maintenance and operation of the ferry in question is a purely governmental function, engaged in by the municipality and its officers for the benefit of the public at large, still the tax involved is imposed, not upon the state instrumentalities, but upon the persons paying for the transportation services, and that the state authorities could be legally required to collect the moneys for such transportation and pay the tax over to the United States.

We do not understand that the establishment and operation of a ferry by any governmental body can be properly regarded as a business enterprise, nor that there is or can be anything private about it. We understand it to be the duty of the government, whether national, state, county, or city, to provide suitable roads, bridges, and ferries for the convenience of the public, and that when such a government undertakes to do so, and to itself operate them, it is in the exercise of a strictly governmental function, and that the public have the right to the use thereof upon complying with the terms and conditions legally prescribed. It has always been so, as we understand the law. In the case of Hart v. Bridgeport, 11 Fed. Cas. 681, No. 6,149, 13 Blatchf. 289, Judge Shipman, in speaking of the line of demarcation between public governmental duties and private or corporate duties, said at page 682:

"Public duties are, in general, those which are exercised by the state as a part of its sovereignty, for the benefit of the whole public, and the discharge of which is delegated or imposed by the state upon the municipal corporation. They are not exercised, either by the state or the corporation, for its own emolument or benefit, but for the benefit and protection of the entire population. Familiar examples of such governmental duties are the duty of preserving the peace, and the protection of property from wrongdoers, the construction of highways, the protection of health, and the prevention of nuisances. The execution of these duties is undertaken by the government, because there is a universal obligation resting upon the government to protect all its citizens, and because the prevention of crime, the preservation of health, and the construction of means of intercommunication are benefits in which the whole community is alike and equally interested. Private or corporate powers are those which the city is authorized to execute for its own emolument, and from which it derives special advantage, or for the increased comfort of its citizens, or for the well ordering and convenient regulation of particular classes of business of its inhabitants, but

are not exercised in the discharge of those general and recognized duties which are undertaken by the government for the universal benefit."

That it is a principle of the common law that ferries are publici juris, and can be granted by the sovereign power, see Conway et al. v. Taylor's Executor, 66 U. S. (1 Black) 603, 17 L. Ed. 191; Fanning v. Gregoire et al., 57 U. S. (16 How.) 524, 14 L. Ed. 1043; Mills v. St. Clair Co. Com'rs, 3 Scam. (Ill.) 53; Carroll v. Campbell, 108 Mo. 550, 17 S. W. 884. In McQuillin on Municipal Corporations, vol. 1, § 227, p. 514, it is said:

"The use of streets is designed for the public at large, as distinguished from the legal entity known as the city, or municipal corporation. The management of highways may be characterized as municipal duties relating to governmental affairs. During the early periods of English history the highways were laid out and constructed directly by the government. The government assumed the immediate and sole management of them, and this was recognized as an essential governmental function. In this country the control of highways is primarily a state duty. They are everywhere maintained for the use of the public at large. To the commonwealth here, as to the king of England, belongs the franchise of every highway as a trustee for the public, and streets regulated and repaired by the authority of a municipal corporation are as much highways as are rivers, railroads, canals, or public roads laid out by authority of the quarter sessions. In England a public road is called the king's highway, and, though it is not usually called the commonwealth's highway here, it is so in contemplation of law, for it exists only by force of the commonwealth's authority.'"

At page 893, § 406, the same author says:

"A ferry may be regarded as the continuation of a public highway from one side of the water over which it passes to the other. In this sense it is a substitute for a bridge, and its end and use is the same. A ferry is a right or franchise which cannot be exercised in England without the king's license, and in this country it cannot be exercised without a legislative grant. In law it is treated as a franchise. It does not belong to the riparian proprietor of the soil. The state may authorize a municipal corporation to establish and license ferries."

To the same effect are the decisions in the cases of East Hartford v. Hartford Bridge Co., 10 How. 511, 13 L. Ed. 518; People v. S. F. & A. R. Co., 35 Cal. 606; City of New York v. Starin, 106 N. Y. 1, 12 N. E. 631; Hackett v. Wilson, 12 Or. 25, 6 Pac. 652; Reid v. Lincoln County, 46 Mont. 41, 125 Pac. 429; Patterson v. Wollmann, 5 N. D. 608, 67 N. W. 1040, 33 L. R. A. 536.

The South Carolina case (199 U. S. 437, 26 Sup. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737), referred to by counsel on both sides, involved an excise tax levied by the general government on the sale of intoxicating liquor by agents designated by the state for its disposal, and the court—three justices dissenting—held that the business so entered upon and conducted by the state was of a private business nature, and therefore not exempt from an excise tax. But that, in our opinion, was a wholly different case from the present one. The prevailing opinion did not undertake to overrule any of the numerous preceding decisions of the same court upon the general subject, but to distinguish them. One of the preceding cases was that of Ambrosini v. United States, 187 U. S. 1, 23 Sup. Ct. 1, 47 L. Ed. 49. In that case what was called the Dramshop Act of the Legislature of Illinois, passed for

the purpose of regulating the liquor traffic in protection of the public, and certain ordinances of the city of Chicago enacted thereunder, required bonds to be given by applicants as prerequisites to the issue of licenses permitting sales. The court held that the granting of such licenses was a strictly governmental function, and that the giving of the bonds was a part of the same transaction, and to tax either would be to impair the efficiency of the state and municipal action, and therefore was unconstitutional.

In United States v. Baltimore & Ohio R. Co., 17 Wall. 322, 21 L. Ed. 597, the Supreme Court held that the United States could not tax revenues received by a municipal corporation of the state of Maryland from funds invested by it in stock of a railroad company, for the reason that such investment was made by the city in its governmental capacity for the general benefit of its citizens. So, in the instant case, it seems clear to us that the establishment and operation of the ferry in question by the county of King under legislative grant of power for the benefit of the public was in pursuance of its strictly governmental function.

It is true that in the present case the tax was not imposed directly upon the county of King, but upon the persons paying to it the transportation charges; but it is obvious that the collection of those charges is at least one of the means which the county must resort to for the purpose of paying the costs of the ferry, which, if insufficient, must be made good from its other revenues or by general taxation. Hence it seems plain that the federal tax here involved is an interference with and a burden upon the governmental functions of the state.

The judgment is affirmed.