## Amusement Taxes at State Teachers' College

BOLLA, Deputy Attorney General, April 10, 1950.—
We have your request for advice concerning the duties
of a State teachers' college with respect to the assess-
ment and collection of amusement taxes levied by local
municipalities and by the Federal Government.

You first ask whether a State teachers' college is
required to assess and collect an amusement tax es-
tablished by a local municipal ordinance on tickets of
admission to student activities, where such are held
on a campus of a State teachers' college within the
boundaries of the taxing municipalities.

The Act of June 25, 1947, P. L. 1145, as amended by
the Act of May 9, 1949, P. L. 898, 53 PS §2015.1 et
seq., empowers certain political subdivisions to levy,
assess and collect taxes on all "persons, transactions,
occupations, privileges, subjects and personal property
within the limits of such political subdivisions", pro-

vided that such taxable privileges, etc., are not subject to a State tax or license fee. The 1949 amendment limited the authority of the political subdivision to levy a tax on admissions to places of amusement, athletic events and the like to a maximum tax of 10 percent.

Eleven of the fourteen State teachers' colleges in Pennsylvania are located in boroughs; one in a third class city (Lock Haven) ; one in a town (Bloomsburg) ; and one, the Cheyney Training School for Teachers, in a second class township (Thornbury). All 14 are located within the limits of a third or fourth class school district. The Act of 1947, supra, empowers, inter alia, boroughs, townships, third class cities, and school districts of the third and fourth classes to levy such a tax, but does not apply to second class townships.

Under section 2003 of the School Code of May 10, 1949, P. L. 30, 24 PS §20-2003, State teachers' colleges are a part of the public school system of the Commonwealth. In State Teachers Colleges Athletic Contest, 37 D. & C. 551, we ruled that a State teachers' college "is a part of the Commonwealth's administrative department and that as such it is a State instrumentality or governmental agency".

As a part of the public school system a State teachers' college may provide for athletic contests as part of its curriculum. In Student Activities at State Teachers Colleges, 22 D. & C. 34, we held that there was no legal objection to placing athletic contests and other student activities into the hands of student organizations, subject to conditions prescribed by the trustees. However, irrespective of the manner in which the admissions to athletic contests and other student activities are handled, such contests and activities are conducted by the State teachers' college as one of its functions.

It is clear that a State teachers' college as an agency of the Commonwealth is not a "person" within the

meaning of the Act of 1937, supra, authorizing the imposition of admissions taxes by municipal subdivisions, because the Commonwealth is not specifically named therein.

The Act of 1947 does not define "person". The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 101(84), 46 PS §601(84), defines person as including "a corporation, partnership and association, as well as a natural person".

In Costs in Liquor Control Board Cases, 36 D. & C. 397, we said:

"Furthermore, it is a well established principle of law that statutes enacted by the legislature are not applicable to the Commonwealth unless it is specifically named. See for example Baker et al v. Kirschnek et al., 317 Pa. 225 (1935), wherein the court decided that *the Commonwealth was not a 'person' within the meaning of that word* as used in an act prohibiting the sale of liquor. In Jones v. Tatham, 20 Pa. 398, 411 (1853), the court said:

" 'The general business of the legislative power is to establish laws for individuals, not for the sovereign; and, when the rights of the Commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily applied.' "

Under this principle, it has been held that a municipality may not tax the property of the Commonwealth, irrespective of its use in a proprietary or governmental function: Commonwealth v. Dauphin County et al., 354 Pa. 556 (1946), affirming 57 Dauph. 215; Commonwealth State Employees' Retirement System v. Dauphin County et al., 335 Pa. 177 (1939), affirming 46 Dauph. 175. Since a State teachers' college is not a "person" within the meaning of the Act of 1947, supra, the local municipal subdivisions do not have any power or authority to levy an admissions tax on the

college as the *promoter* of the athletic contest or other activity.

However, we understand that in most instances, local admissions taxes are imposed not upon the promoter of the event, but upon the persons seeking admission thereto. Since the immunity of the sovereign would not extend to such persons, an admissions tax levied against them might be valid, even though the event in question was conducted by a State teachers' college. Since the validity of such a tax would be of primary concern to the taxpayer, and not to the Commonwealth, we shall assume for the purpose of this opinion, without so deciding, that a local admissions tax on persons attending an event sponsored by a State teachers' college is valid.

This brings us to the second question, in which you ask whether a local taxing agency may send its representative to the campus of the State teachers' college, collect such local amusement tax, and remove the moneys so collected forthwith without processing them through the students' activities fund account.

In Formal Opinion No. 313, 1939-1940 Op. Atty. Gen. 163, this department ruled that the City of Philadelphia could not impose upon the Commonwealth any duty to collect the Philadelphia wage tax levied upon the salaries of officers and employes of the Commonwealth, saying:

"It is thus quite clear that a municipal corporation cannot impose upon the sovereign, the Commonwealth, any duties or obligations unless the Commonwealth consents thereto. The creature of the state cannot dictate to its creator. The City of Philadelphia cannot compel the Commonwealth, or any of its political subdivisions, administrative departments, boards or commissions, to submit any data to the city relating to names and salaries of their employees; or to deduct

from such employees' pay any tax levied by Philadelphia."

In Marson v. Philadelphia et al., 342 Pa. 369 (1941), the court decided that the City of Philadelphia had the power to levy a wage tax upon salaries of certain officers and employes of the Commonwealth, but also held that the city could not impose any duty on the Commonwealth to collect the tax, saying:

"It must be conceded that when any power issues a 'command' to a superior power, that 'command' has only the force of a request. The State of Pennsylvania can, *if it chooses*, ignore the command of this ordinance that it collect from its employees, residing in Philadelphia, this tax. The State can also refuse, *if it chooses to do so*, the demand for a list of its employees residing in Philadelphia. . . ." (Italics supplied.)

Under these rulings, a State teachers' college may, "if it chooses", ignore or refuse the demand of a local municipal subdivision to collect the local admissions tax, or to permit a representative of the municipality to collect such admissions tax on the college campus. On the other hand, we see no legal objection to acceding to the request of the municipal subdivision for the collection of admissions taxes by an agent of either the college or the municipality, if in the opinion of the college authorities such a course of procedure would be to the best interests of the college.

Finally, you raise the same questions as to the assessment and collection of the Federal admissions tax.

The Federal tax on admissions is imposed by section 1700 of the Internal Revenue Code, as amended, 26 U. S. C. §1700. Section 1715 of the Internal Revenue Code, 26 U. S. C. §1715, provides that "every person receiving any payments for admission" subject to the Federal tax "shall collect the amount thereof from the person making such payments". As originally enacted, the act contained an exemption in favor of religious,

educational or charitable entertainments, except athletic games or exhibitions, the profits of which inured wholly or partly to the benefit of any college or university: 26 U. S. C. §1701. These exemptions were eliminated by section 541 (b) of the 1941 Revenue Act. See Treasury Regulation 43, secs. 101.15 and 101.16, the latter of which reads as follows:

"The fact that the authority charging admissions or receiving the proceeds thereof is the United States or an agency thereof, or a State or Territory or political subdivision thereof, such as a county, city, town, or other municipality, does not make such admissions exempt."

In Allen v. Regents of University System of Georgia, 304 U. S. 439 (1938), the court held that football games conducted by the University of Georgia and Georgia Tech were subject to Federal admissions tax, and that the State authorities were required to collect and pay over such tax to the United States. A similar ruling was recently made with respect to admissions to a public bathing beach in Wilmette Park District v. Campbell, 338 U. S. 411, 419, 420 (1949), where the court said:

". . . the State 'is not necessarily protected from a tax which well may be substantially or entirely absorbed by private persons.' . . .

". . . 'The mere fact that the economic burden of such taxes may be passed on to a state government and thus increase to some extent, here wholly conjectural, the expense of its operation, infringes no constitutional immunity. . . .' "

Therefore, we are of the opinion that the Federal admissions tax applies to athletic contests or other activities conducted by a State teachers' college, and that the college has the obligation under the Federal laws to collect the amount of the tax from the person who pays the admissions charged, and to transmit the

taxes thus collected to the proper official of the United States.

Accordingly, you are advised that:

1. A State teachers' college is under no legal duty or obligation to undertake the collection of an admissions or amusement tax imposed by a local political subdivision of the Commonwealth.

2. A State teachers' college is under no legal duty or obligation to permit a representative of a local political subdivision to use the campus for the purpose of collecting any admissions or amusement tax imposed by such subdivision.

3. A State teachers' college is required to collect the Federal admissions tax from the person who pays the admission, and to transmit the Federal taxes thus collected to the United States.