UNITED STATES of America,
Appellant,

v.

WASHINGTON TOLL BRIDGE AUTHORITY, d/b/a Washington State Ferries, Appellee.

No. 17379.

United States Court of Appeals Ninth Circuit.

July 31, 1962.

Rehearing Denied Sept. 26, 1962.

the use of motion procedure to procure disbursement of funds on deposit with the court.

Brockman Adams, U. S. Atty., Seattle, Wash., and C. W. Billinghurst, Asst. U. S. Atty., Tacoma, Wash., for appellant.

John J. O'Connell, Atty. Gen., for State of Washington, and John W. Riley, Deputy Atty. Gen., for State of Washington, Olympia, Wash., for appellee.

George N. Hayes, Atty. Gen., for State of Alaska, and Michael M. Holmes, Asst. Atty. Gen., State of Alaska, Juneau, Alaska, and appearing for State of Alaska as amicus curiae.

Before CHAMBERS, BARNES, HAMLEY, HAMLIN, JERTBERG, MERRILL, KOELSCH, BROWNING and DUNIWAY, Circuit Judges.

JERTBERG, Circuit Judge.

This case draws in issue the constitutional and statutory application of the federal transportation excise taxes to the fares paid for the transportation of persons and property on vessels operated by appellee, Washington Toll Bridge Authority, d/b/a Washington State Ferries.

Specifically, appellant, the United States, instituted an action in the court below to recover unpaid federal transportation excise taxes assessed against the appellee for the first three quarters of 1957. The District Court denied recovery. Its opinion is reported at 190 F. Supp. 95. The jurisdiction of the District Court is founded on § 7402(a) of the Internal Revenue Code of 1954. The jurisdiction of this Court rests on Title 28 U.S.C.A. §§ 1291–4.

The Washington Toll Bridge Authority was established, and its powers and duties prescribed, by the laws of 1937, Chapt. 173, p. 654.[1] It is an instrumentality of the State of Washington and exists, for the most part, as a self-supporting entity with all of the rights and liabilities of a common carrier. Since 1951, it has operated an extensive ferry system on the Puget Sound and its tributaries between local and international points. This system is perhaps the larg-

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, and Joseph Kovner, Attys., Tax Division, Dept. of Justice, Washington, D. C.,

---

1. The enabling Act may be found in Washington Revised Code, Section 47.60 et seq.

est of its kind in the United States. Its necessity is dictated by the geography of the area and it provides a vital link in the State's highway system, carrying passengers and property over various bodies of water to connect the State highways and thereby avoiding circuitous land travel. The ferry system operated by the Authority is an expansion of services formerly provided, in part, by King County, State of Washington, a municipal corporation, and its successor, King County Ferry District No. 1, and, in greater part, by the Puget Sound Navigation Company, a private corporation.

Since the commencement of the Authority's ferry operations, the United States has pursued it for taxes imposed by §§ 4261, 4271 and 4291, Title 26 U.S. C.A. of the Internal Revenue Code of 1954.[2] These provisions are comprehensive in application. They impose a tax upon the "amount paid" for the transportation of persons or property "by water" and other means. The tax is made payable by the person paying for the transportation and the person receiving the payment is obligated to collect the tax. From June 1951 until April 1, 1952, the Authority collected and paid similar taxes under protest. Thereafter, it entered into extended negotiations with the Commissioner of Internal Revenue which culminated in an agreement whereby past claims were compromised. In order to

adjudicate the question the Authority agreed to raise its fares in an amount equal to the tax and to place the amount in escrow and, in turn, the Commissioner agreed to promptly initiate litigation. Pursuant to this agreement an amount equal to the tax was collected by the Authority for the first three quarters of 1957 and placed in escrow. The United States made its assessment and filed suit.

The findings of fact by the District Court are based upon a stipulation with exhibits and the testimony of Darrell Hedges, executive secretary of the Authority. These findings are not strenuously disputed and are substantially, though more detailed, the same as heretofore recited. The District Court, following a previous decision of this Court, infra, reached the conclusion that the operation of the ferry system by the Authority was a governmental function and, as such, was immune from federal taxation. In addition, the District Court held that these tax provisions were not intended by Congress to apply to state-operated ferry systems. The correctness of these conclusions of law are the primary concern of this appeal.

In United States v. King County, 281 F. 686 (9th Cir.1922), this Court held that the ferry system operated by King County was immune from a federal tax of the type here involved because it was

2. The pertinent provisions of these Sections are as follows:

"§ 4261. Imposition of tax

"(a) Amounts paid within the United States.—There is hereby imposed upon the amount paid within the United States for taxable transportation (as defined in section 4262) of any person by rail, motor vehicle, water, or air a tax equal to— * * *.

* * * * *

"(d) By whom paid.—Except as provided in section 4262, the taxes imposed by this section shall be paid by the person making the payment subject to the tax."

"§ 4271. Imposition of tax

"(a) Property other than coal.—There is hereby imposed upon the amount paid within or without the United States for the transportation of property, except coal, by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to 3 per cent of the amount so paid.

* * * * *

"(d) By whom paid.—The taxes imposed by this section shall be paid by the person making the payment subject to the tax."

"§ 4291. Cases where persons receiving payments must collect tax

"Except as otherwise provided in sections 4231 and 4264(a), every person receiving any payment for facilities or service on which a tax is imposed upon the payor thereof under this chapter shall collect the amount of the tax from the person making such payment. * * *"

"an interference with and a burden upon the governmental functions of the state."[3]

Contrary to the assertion of appellant that the Washington Toll Bridge authority exists as a "separate entity," specially created by the State of Washington rather than as an "agency" of the State in the full sense of that term, we shall consider the questions involved in this appeal on the basis of the District Court's conclusion that the Authority is an instrumentality of the State of Washington authorized to operate the ferry system as an integral part of the highway system of the States.

It was recognized at the time of the decision in King County, as it is now, that the control over, and the operation of, ferries is historically a governmental function. It was thought at the time of such decision and for some years thereafter, in order to preserve the independence of the State, that the federal government could not constitutionally impose a tax on State activities determined to be governmental in character as opposed to activities determined to be proprietary. In more recent years, however, this distinction has been recognized as an unsatisfactory and inconclusive guide for determining the immunity of a State activity from the federal taxing power. In Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427 (1938), the question for decision was whether the imposition of a federal income tax on salaries received by employees of the Port of New York Authority placed an unconstitutional burden on the States of New York and New Jersey. The Port Authority is a bi-state corporation created by compact between New York and New Jersey and approved by the Congress of the United States. The Authority constructed vehicular bridges over waters of New York Harbor or adjacent to it, and vehicular tunnels under the Hudson River. The Authority collected tolls from the users of such facilities. It is obvious that the bridges and tunnels formed a part of the highway systems of the two States and that the construction and operation of the same was a governmental function. It was contended that the imposition of a federal income tax on the salaries paid to employees of the Authority constituted an interference with and a burden upon the States in the performance of a governmental function. This contention was rejected by the Supreme Court in sustaining the imposition of the tax. In the course of its opinion, the Court stated (at pp. 419–420, 58 S. Ct. at p. 975) that prior judicial pronouncements of that Court establish

"two guiding principles of limitation for holding the tax immunity of state instrumentalities to its proper function. The one, dependent upon the nature of the function being performed by the state or in its behalf, excludes from the immunity activities thought not to be essential to the preservation of state governments even though the tax be collected from the state treasury. * * * The other principle, exemplified by those cases where the tax laid upon individuals affects the state only as the burden is passed on to it by the taxpayer, forbids recognition of the immunity when the burden on the state is so speculative and uncertain that if allowed it would restrict the federal taxing power without affording any corresponding tangible protection to the state government; even though the function be thought important enough to de-

3. After holding that the operation of a ferry was strictly a governmental function, the Court said, at p. 690:
   "It is true that in the [instant] case the tax was not imposed directly upon the county of King, but upon the persons paying to it the transportation charges; but it is obvious that the collection of those charges is at least one of the means which the county must resort to for the purpose of paying the costs of the ferry, which, if insufficient, must be made good from its other revenues or by general taxation. Hence it seems plain that the federal tax here involved is an interference with and a burden upon the governmental functions of the state."

334

mand immunity from a tax upon the state itself, it is not necessarily protected from a tax which well may be substantially or entirely absorbed by private persons."

Further, in the course of its opinion, the Court stated, at p. 422, 58 S.Ct. at p. 976:

" * * * The state and national governments must co-exist. Each must be supported by taxation of those who are citizens of both. The mere fact that the economic burden of such taxes may be passed on to a state government and thus increase to some extent, here wholly conjectural, the expense of its operation, infringes no constitutional immunity. Such burdens are but normal incidents of the organization within the same territory of two governments, each possessed of the taxing power."

In New York v. United States, 326 U.S 572, 66 S.Ct. 310, 90 L.Ed. 326 (1946), the Supreme Court held that the State of New York was not immune from the tax imposed by § 615 of the Revenue Act of 1932 on the sale of mineral waters taken from Saratoga Springs owned and operated by the State. The State of New York contended that it was immune from the tax because it was engaged in the disposition of its natural resources and that such activity was governmental in character. While it can be reasonably asserted that in the sale of mineral waters the State was engaging in a proprietary instead of a governmental function, the Court took occasion to state (at p. 580, 66 S.Ct. at p. 313), as follows:

" * * * To rest the federal taxing power on what is 'normally' conducted by private enterprise in contradiction to the 'usual' governmental functions is too shifting a basis for determining constitutional power and too entangled in expediency to serve as a dependable legal criterion. The essential nature of the

4. See also Wilmette Park Dist. v. Campbell, 338 U.S. 441, 70 S.Ct. 195, 94 L. Ed. 205 (1949) and Allen v. Regents of

problem cannot be hidden by an attempt to separate manifestations of indivisible governmental powers."

In concluding its opinion, the Court stated, at p. 583, 66 S.Ct. at p. 314:

" * * * So we decide enough when we reject limitations upon the taxing power of Congress derived from such untenable criteria as 'proprietary' against 'governmental' activities of the States, or historically sanctioned activities of government, or activities conducted merely for profit, and find no restriction upon Congress to include the States in levying a tax exacted equally from private persons upon the same subject matter."

From the teachings of the above cited cases [4] it is manifest that immunity of the State activity here involved from the taxing power of the federal government cannot be successfully asserted on the *ad hoc* basis that such activity involves a governmental function. Attention must be focused on the specific activity and on the nature and extent of interference with, or burden upon, the State, and this interference or burden must be "actual and substantial," and not the creature of speculation and conjecture.

Applying these teachings to the instant case, it is difficult to understand how the present tax unduly interferes with the State of Washington's function of government. The record is void of any tangible evidence to this effect. The tax involved is made payable by the persons who pay for the transportation while the State's only obligation is to collect the tax. Since the King County case, the States have been forced to accept the role of tax collector for the federal government on numerous occasions, e. g., income and admission taxes. See Commonwealth of Massachusetts v. United States, 296 F.2d 336 (1st.Cir.1961). Such collections have not unduly interfered with,

The University System of Georgia, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448 (1938).

or placed a burden upon, the states' function of government. And because the tax is absorbed by the persons using the ferry system, it imposes no undue economic burden upon the State of Washington. Any indirect economic consequences incident to such a tax, such as a decrease in the volume of business if the toll is raised or absorption by the State if it is not, are speculative in nature, not "actual or substantial." Here the Authority raised its toll in an amount equal to the tax and there is no claim that this has affected the operation of its ferry system in any manner. Consequently, we hold that the Authority is not constitutionally immune from the duty to collect and to remit to the United States Government the federal excise taxes on transportation here involved. This holding requires us to, and we do, overrule the earlier holding of this Court in the King County case.

■ Having concluded that no immunity from the duty to collect and remit the taxes exists, the next question is whether Congress intended them to apply to a State-operated ferry system. For this purpose the provisions concerning the tax on persons and property will be considered separately. Section 4271 imposes the tax upon the "amount paid" for the transportation of property "by water" and other means. It is imposed on the person paying for said transportation. Section 4272(a) discloses that this tax does not apply to amounts paid to a person who is not "engaged in the business of transporting property for hire." [5] These Sections were construed in United States v. State Road Department of Florida, 255 F.2d 516 (5th Cir.1958). There the Court recognized the power of Congress to tax non-discriminatorily activities of a State and, conversely, to exempt a State from such a tax. It held that the exemption in § 4272(a) applied to a State-operated ferry system because it was not "engaged in the business of transporting property for hire." [6] In view of the historical nature of a State-operated or controlled ferry system and its function as a link in a highway system, this Court agrees with the holding of the Court of Appeals for the Fifth Circuit, construing § 4272 (a) as exempting the tax otherwise made payable under § 4271 for the transportation of property.[7]

Section 4261 imposes the tax on persons. It is likewise made payable by the person paying for the transportation. However, this provision has no exemption equivalent to § 4272(a) where payments are made to persons not engaged in the business of transporting for hire. Nor do any of the exemptions for the tax imposed on persons, as specified in § 4263, apply here.[8] Hence, neither § 4272(a)

5. This exemption in § 4272 reads as follows:
   "(a) Not in business for hire.—The tax imposed under section 4271 shall apply only to amounts paid to a person engaged in the business of transporting property for hire, including amounts paid to a freight forwarder, express company, or similar person, but not including amounts paid by a freight forwarder, express company, or similar person for transportation with respect to which a tax has previously been paid under such section."

6. The Court's opinion reads (at p. 518) as follows:
   "In light of the present day state of the cases, we do not doubt the power of Congress to tax non-discriminatorily many activities in which a state may engage. It is equally clear, however, that Congress can exempt the state from the burden of taxes that otherwise fall uniformly on others. Construing the language of this exemption section as best we can, we conclude that Congress recognized that there would be persons or entities that charged for transportation of property not 'engaged in the business of transporting property for hire.' Otherwise there would be no need for Section 4272 at all. We think the State Road Department is such an entity."

7. §§ 4271 and 4272 were repealed by § 4 of the Tax Rate Extension Act of 1958, P.L. 85–475, 72 Stat. 260.

8. The exemptions specified in § 4263 include commutation travel, small vehicles and aircraft on nonestablished lines, fishing trips, certain organizations, and members of the armed forces.

nor the State Road Department of Florida case is authority for reasoning that the tax on persons is not applicable to State-operated ferry systems. Congress must have intended to, and did, treat the tax on persons and property differently, enacting statutes broad in scope to encompass the subject matter here involved, but exempting therefrom the tax on property and not the tax on persons.

It may be argued that only "persons" receiving the payments are obligated to collect the tax under § 4291 and that a State is not such a person. However, a State has been considered a person under comparable statutes.[9] Any other construction of the word "person" would be unreasonable once it is determined that the tax sought to be collected applies and is within the constitutional power of Congress to impose. The Authority's argument that a state is not such a "person" is untenable and assumes a factual situation not disclosed by the record. This Court concludes that §§ 4261 and 4291 require passengers of the ferry system to pay the tax and the Authority to collect it and pay it over to the United States.

■■ We find no merit in the Authority's contention that the decision of this Court in the King County case is *res judicata* in this case. This defense is inapplicable for the reasons that a different tax year is involved, a different statute is involved, and different parties are involved. Similarly, the doctrine of collateral estoppel is inapplicable. As stated in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, at p. 599, 68 S.Ct. 715, 92 L.Ed. 898 (1948):

> " * * * That principle [collateral estoppel] is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become ob-

solete or erroneous with time, thereby causing inequities among taxpayers."

The judgment of the District Court is reversed and the cause is remanded to the District Court with directions to enter judgment in accordance with the views expressed herein.

CHAMBERS, Chief Judge (concurring).

The foregoing opinion is technically excellent and probably interprets correctly the precedents since our case of United States v. King County, 9 Cir., 281 F. 686.

If this were a court that could decide what the law ought to be, I would dissent.

---

9. Sims v. United States, 359 U.S. 108, 79 S.Ct. 641, 3 L.Ed.2d 667 (1959); Wilmette Park Dist. v. Campbell, 338 U.S. 411, 70 S.Ct. 195, (1949); Commonwealth of Massachusetts v. United States, supra.