**STATE OF CALIFORNIA, acting By, Through and on Behalf of the CALIFORNIA DEPARTMENT OF JUSTICE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. S–2629.**

United States District Court, E. D. California.

May 31, 1977.

---

Charles C. Kobayashi, Deputy Atty. Gen., Sacramento, Cal., for plaintiff.

Richard W. Nichols, Chief Asst. U. S. Atty., Sacramento, Cal., Harold S. Larsen, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

WILKINS, District Judge.

Plaintiff, the State of California, Department of Justice, challenges in this action the constitutional authority of Congress to impose an air transportation excise tax upon air travel by employees of the Department. The parties agreed to submit the matter for this Court's decision without trial.

## BACKGROUND

Section 4261 of the Internal Revenue Code of 1954 [hereinafter cited as 26 U.S.C. § 4261, *et seq.*] imposes an excise tax upon air travel within the United States, computed at 8% of the cost of the transportation. Until 1970 states and their political subdivisions were exempted from this charge. 26 U.S.C. § 4292 (1967) (amended 1970). In 1970 Congress removed this exemption, thus subjecting states to the charge for the first time. Airport and Airway Development Act of 1970, Pub.L. 91–258, § 205(a)(2), 84 Stats. 219 (amending 26 U.S.C. § 4292 (1967)). This amendment was effective July 1, 1970.

The State of California resisted paying this charge from the outset. On June 3, 1970, the Attorney General requested a ruling from the Internal Revenue Service that the charge imposed by section 4261 can not be constitutionally applied to air transportation purchases by the Department of Justice. The Internal Revenue Service declined to make such a ruling. In January, 1971, the State Department of Justice filed a claim for refund of $1,174.42, the amount charged the Department under section 4261 from July 1, 1970, to October 1, 1970. The Internal Revenue Service disallowed this claim, in a letter dated August 3, 1971. In November, 1972, the State Department of Justice filed this action for refund of "taxes overpaid", under 26 U.S.C. § 7422 and 28 U.S.C. §§ 1346(a)(1) and 1402.

On February 27, 1976, this Court issued a pre-trial Order, embodying the parties' agreement to submit the matter for decision on their briefs, without trial. Pursuant to this Order, the parties stipulated to the relevant facts, which are summarized above.

## DECISION

The State assails Congress' power to levy the 8% air transportation charge upon the travel of Department of Justice employees on two theories, which rest on alternative characterizations of the charge. First, if the charge is viewed as a *tax*, the State argues that the doctrine of intergovernmental tax immunity shields the State from liability. Second, if the charge is viewed as a *regulation of commerce*, the State contends that the recent case of *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), forbids this degree of federal interference with State functions.

The defendant, the United States, counters each of these arguments, and introduces a third argument, *viz.*, that this charge is really a "user charge" exacted as the *quid pro quo* for federal expenditures on airport improvements. Before discussing the intergovernmental tax immunity and commerce power issues raised by the State, the defendant's "user charge" argument must be disposed of.

Characterizing the charge at issue as a "user charge" fairly reflects Congress' intention in imposing it. The charge is part of a legislative program to fund airport improvements by having the users assume the cost. H.Rep.No.91–601, 91st Cong., 1st Sess., pp. 38, 46. Assuming this characterization is proper, the question is whether such a characterization has constitutional significance.

The cases cited by the defendant for the proposition that a *quid pro quo* element to a tax is constitutionally important all involve the *states'* power to tax despite an express constitutional prohibition. *See, e. g., Clyde Mallory Lines v. Alabama*, 296 U.S. 261, 56 S.Ct. 194, 80 L.Ed. 215 (1935). In these cases the Supreme Court reasoned that the

Constitution was not intended to bar states exacting a payment for services rendered by them. Whether this same rationale can justify the federal government imposing a charge on the states appears to be an open question under current law. Rather than resolve this question, the Court is of the opinion that this case can be decided on other, more certain, grounds, and therefore the Court expressly declines to reach this issue.[1] These more certain grounds require discussion of the doctrine of implied intergovernmental tax immunity, and of the limits to Congress' commerce power over the states.

### The Doctrine of Implied Intergovernmental Tax Immunity

■ The doctrine of intergovernmental tax immunity arises ˏby implication from the federal constitution. It originated in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). Through the nineteenth and early twentieth centuries courts invoked the doctrine to extend a generous immunity to the states from federal taxes. The State in the instant action relies principally upon these earlier cases. *See, e. g., Collector v. Day*, 78 U.S. (11 Wall.) 113, 20 L.Ed. 122 (1870). The United States relies upon the Supreme Court's most recent decision concerning the doctrine, *State of New York v. U. S.*, 326 U.S. 572, 66 S.Ct. 310, 90 L.Ed. 326 (1946), which constricts the states' immunity. Judge Cannella, in *City of New York v. U. S., supra*, which involved the same charge as is at issue here, harmonized the conflicting authority with the following observations:

'Despite its bold beginning and vigorous earlier life, the doctrine of intergovernmental immunity has suffered a marked decline over the past half century.' [cite omitted] . . . *New York v. U. S.,*

---

1. Despite the absence of Supreme Court authority sustaining this theory, a Texas District Court adopted the *quid pro quo* rationale to sustain imposition of the same charge as is at issue here upon the State of Texas. *Texas v. U. S.*, 72–2 U.S.T.C., ¶ 16048 (W.D.Tex., July 11, 1972), aff'd *per curiam*, 73–1 U.S.T.C., ¶ 16085 (5th Cir., Dec. 4, 1972). The only other

case considering the constitutionality of the subject charge, *City of New York v. U. S.*, 394 F.Supp. 641 (S.D.N.Y.1975), aff'd *per curiam*, 76–1 U.S.T.C., ¶ 16225 (2d Cir., Feb. 11, 1976), cited the *Texas* case with approval, but sustained the charge solely on the ground that there was no intergovernmental tax immunity.

[*supra*], stands as the Court's most recent pronouncement in this area . . . [and] render[s] the earlier decisions of but historical interest . . . . 394 F.Supp. at 644.

This Court agrees with Judge Cannella that the standards announced in *State of New York v. U. S.* must be applied to determine whether the State in the instant action can successfully claim immunity.

Justice Stone, in his concurrence in *State of New York v. U. S.*, rested the states' immunity on two possible grounds:

> Concededly a federal tax discriminating against a State would be an unconstitutional exertion of power over a coexisting sovereignty within the same framework of government. . . .
>
> [A] federal tax which is not discriminatory as to the subject matter may nevertheless so affect the State, merely because it is a State that is being taxed, as to interfere unduly with the State's performance of its sovereign functions of government. 326 U.S. at 587, 66 S.Ct. at 316.[2]

Thus, in evaluating the State's claim of immunity, two questions must be asked. First, whether the instant charge discriminates as to subject matter against the State. Second, whether it unduly interferes with the performance of the State's sovereign functions.

The air travel excise tax at issue here clearly does not discriminate against the State. It falls evenly upon state and private travelers. The State argues, however, that historically the activities of an attorney general have been viewed as essential to a state's sovereign and independent existence. This argument misses the point of Justice Stone's analysis. The subject matter being taxed is air travel, not the performance of the Attorney General's duties. The air travel excise tax is imposed "without regard to the personality of the taxpayer", 326 U.S. at 587, 66 S.Ct. at 317, and therefore does not discriminate against the State.

Even a non-discriminatory tax can give rise to state immunity if its imposition unduly interferes "with the State's performance of its sovereign functions of government." In the instant case the State has not shown such undue interference. The most that the State can demonstrate is the financial burden of the tax, which is estimated to total about $1,000,000 since 1972 for all state departments. (Plaintiff's Reply Brief, Exhibit "A", at 2.) This burden falls short of interfering with or impairing the State's sovereign functions of government. *See City of New York v. U. S.*, 394 F.Supp. at 646. The Court must conclude, therefore, that the second ground for immunity mentioned by Justice Stone does not apply in this case.

In summary, this Court is of the opinion that if the instant charge is characterized as a *tax*, the State of California may not invoke the doctrine of implied intergovernmental tax immunity to resist paying the charge. *See U. S. v. Washington Toll Bridge Authority*, 307 F.2d 330, 334 (9th Cir. 1962). The air travel excise tax does not discriminate against the State, nor does it unduly interfere with the State's performance of its sovereign functions. Under *State of New York v. U. S.*, *supra*, therefore, no immunity exists. ·

2. No majority opinion exists in the *State of New York v. U. S.* case. Justice Frankfurter "announced" the judgment, in which Justice Rutledge joined, as well as concurring separately. Justice Frankfurter's formulation gives the States the least immunity. Under his minimal standard States would be immune only against taxes which discriminate against state activities, or taxes which are imposed upon activities and property that "partake of uniqueness from the point of view of intergovernmental relations", e. g., a Statehouse (326 U.S. at 582, 66 S.Ct. at 314). Justice Stone authored a concurrence, in which three other justices joined, which defined the immunity somewhat broader. The dissenters advocated even more protection for the States. This Court has adopted Justice Stone's analysis, because Justice Frankfurter's minimal immunity standard seems to afford the State no protection—the activity being taxed, air travel, is not "unique" in the sense he described. Thus, if the State is immune at all, it must be because the more protective standard of Justice Stone has been breached.

*The Limits to Congress' Commerce Power*

■ The alternative characterization of the air travel excise charge is that it is a *regulation of commerce*, rather than an exercise of Congress' taxing power. The State devoted much effort to characterizing the charge as a tax, rather than a regulation of commerce, because until recently Congress' commerce power was considered almost plenary, even with respect to states. Early Supreme Court decisions recognized no analog to the implied immunity from taxation to protect the states from exertions of the commerce power. *See U. S. v. California*, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936). More recently, the Supreme Court had suggested that limits to the commerce power where states are concerned might exist at the point where "utter destruction of the State as a sovereign political entity" is threatened. *Maryland v. Wirtz*, 392 U.S. 183, 196, 88 S.Ct. 2017, 2024, 20 L.Ed.2d 1020 (1968).

The Supreme Court recently rejected, however, these views in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The Court held unconstitutional the extension of the Fair Labor Standards Act's minimum wage and maximum hour provisions to most employees of state and local government, on the ground that Congress had exceeded its Commerce Clause power. The Court said that the states' sovereignty raises a barrier to Congress' otherwise plenary power over commerce. 426 U.S. at 844, 96 S.Ct. at 2471. To determine whether this barrier had been transgressed, the Court posed this question:

> [W]hether [decisions concerning wages and hours] are 'functions essential to separate and independent existence,' [cites omitted], so that Congress may not abrogate the States' otherwise plenary authority to make them. 426 U.S. at 845, 96 S.Ct. at 2471.

Later in the opinion the court articulated the principle underlying this question:

> [I]nsofar as the [act of Congress] operate[s] to directly displace the State's freedom to structure integral operations in areas of traditional governmental functions, [it is] not within the authority granted Congress by Art. 1, § 8, cl. 3. 426 U.S. at 852, 96 S.Ct. at 2474.

Thus, in the instant case, this Court must determine whether the air travel charge at issue here "displaces" the State's freedom in carrying out its traditional governmental functions.

In *National League of Cities* the court found that "the minimum wage and the maximum hour provisions . . . impermissibly interfere with the integral governmental functions" of the states, and that therefore they threatened the states' "separate and independent existence." 426 U.S. at 851, 96 S.Ct. at 2474. In arriving at this conclusion the Court emphasized several of the effects of the legislation on the states. First, there were increased costs, which California estimated at between eight and sixteen million dollars. Second, the indirect impact of these costs was the relinquishment or curtailment of certain government programs, at both state and local levels. Third, the legislation displaced state and local decisions on the manner of delivering services, *viz.*, hiring teenagers during the summer for less than the minimum wage, or scheduling the duty hours of police and fire personnel.

The effect on the states of Congress' regulation in *National League of Cities* contrasts sharply with the effect on California of the charge at issue here. In the case at bar the State of California has not demonstrated anything approaching the degree of interference with or actual usurpation of state functions as was present in *National League of Cities*. As mentioned above, the only effect demonstrated by the State is the financial burden imposed by the air travel excise charge. This burden does not rise to the level of interference or usurpation condemned in *National League of Cities*.

The Court concludes, therefore, that State sovereign functions are not impinged to the extent necessary to invoke the protection afforded states from exercises of Congress' commerce power in *National League of Cities*. Accordingly, the Court

finds that if the air travel excise charge is characterized as a regulation of commerce, rather than a tax, Congress has not exceeded its authority under the Commerce Clause by imposing this charge upon the State.

In conclusion, the Court finds that Congress has not exceeded the limits to its powers to tax or to regulate commerce, U.S.Const. Art. 1, § 8, in imposing the air travel excise tax at issue herein upon the State of California. Accordingly, the plaintiff, State of California, can not prevail in this action.

IT IS THEREFORE ORDERED that plaintiff's action be, and hereby is, dismissed.