## FRITZ v. JARECKI.

No. 10307.

United States Court of Apeals, Seventh Circuit.

June 6, 1951.

---

6. Cf. Taft v. United States, 2 Cir., 127 F.2d 876, 877, 878.

446

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., Theron L. Caudle, Asst. Atty. Gen., Ellis N. Slack and Melva M. Graney, Assts. to Atty. Gen., Robert N. Anderson, Herbert S. Fessenden, Sp. Assts. to Atty. Gen., John A. Looby, Jr., Asst. U. S. Atty., Chicago, Ill., for appellant.

Joseph E. Green, Arthur D. Welton, Geo. B. Christensen and Paul T. Kessler, Jr., Chicago, Ill., Winston, Strawn, Shaw & Black, Chicago, Ill., of counsel, for appellee.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

Suit was brought by the appellees, Arthur and Anna E. Fritz to recover penalties assessed against them by the Collector of Internal Revenue for the first Illinois District because of their failure to collect admission taxes under sec. 1700(a) of the Internal Revenue Code, 26 U.S.C.A. § 1700 (a), for the period extending from April 1948 up to and through November 1948.

The case was tried in the District Court without a jury. The facts, in the main, were stipulated though one of the appellees gave some testimony. Judgment was entered against the Collector for $9,515.20, with interest. He prosecutes this appeal to reverse that judgment.

Appellant claims that the findings of fact are not in exact accord with the stipulation between the parties. We have examined and compared the findings and the stipulation and find no substantial material difference.

Appellees owned and operated a "recreational area" on the outskirts of the City of Chicago. It was an open tract of land comprising about 14 acres. Various paths, lanes and roadways, refreshment stands, booths, platforms, canopies, tunnels, bridges, tracks and other structures, either fully or partially enclosed, had been erected on the grounds. Rides and amusement devices of different sorts, including miniature gasoline automobiles, miniature steam trains, and tracks on which to operate them, a merry-go-round or carrousel, a ferris wheel 40 feet in diameter, a miniature roto-whip, miniature automobiles, a small gasoline train running on tracks, together with living ponies, were available. All were designed for the pleasure of the attendant public, especially the juvenile portion thereof.

The various devices and rides were operated and controlled by employees employed for that purpose. The merry-go-round or carrousel was typical. It consisted of a circular platform approximately 14 feet in diameter, containing various effigies or reproductions of animals and other objects upon which persons might seat themselves. The platform, elevated about 9 inches above ground, rotated about a central fixed axis, the motive power being furnished by a ten (10) horsepower motor. When the device was about to be placed in motion, an attendant would walk about the platform of the ride and collect tickets from the riders. Tickets would be taken from all persons riding on the platform, except for children in arms. The platform of the ride was surrounded for approximately three-fourths (¾) of its circumference by a wooden fence located approximately six (6) feet from the outside circumference of the platform. This fence was maintained by the plaintiffs in order to prevent accidents which might result from persons inadvertently walking into the merry-go-round or attempting to jump on the same when in motion. Save and except for the time when the merry-go-round was in motion, all members of the general public were free to enter within the enclosure made by such fence, and upon and around the platform and upon and in all devices mounted thereon without presenting a ticket.

The same privileges of free entry were accorded on all the other rides. Only those who took the ride were obliged to pay.

Portions of the applicable statute and Treasury regulations adopted thereunder,

as in force at the times material, are as follows:

Sec. 1700 of the Internal Revenue Code, 26 U.S.C.A. provides: "There shall be levied, assessed, collected, and paid * * A tax of 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place, including admission by season ticket or subscription", and that the tax imposed "shall be paid by the person paying for such admission."

Sec. 1715 provides: "Every person receiving any payments for admission * * subject to the tax imposed by section 1700 * * * shall collect the amount thereof from the person making such payments", and that the amounts so collected "shall be paid to the Collector * * *."

Sec. 101.2 of Treasury Regulation 43 provides: "The tax is imposed on the 'amount paid for *admission* to any place,' and applies to the amount which *must* be paid in order to gain admission to a place * * *. The term 'admission' means the right or privilege to enter into a place," and sec. 101.3 of Regulation 43 provides: "The tax under sec. 1700(a) of the Code is on the amount paid for admission to any place. 'Place' is a word of very broad meaning, and it is not defined or otherwise limited by the Code. But the basic idea it conveys is that of a definite enclosure or location. The phrase 'to any place' therefore, does not narrow the meaning of the word 'admission,' except to the extent that it implies that the admission is to a definite enclosure or location."

Sec. 1650 of the Internal Revenue Code, 26 U.S.C.A., as amended by sec. 302(a) of the Revenue Act of 1943, c. 63, 58 Stat. 61, imposes a war tax rate effective as of April 1, 1944, of 1 cent for each 5 cents or major fraction thereof of the amount paid for admission to any place within the meaning of sec. 1700(a) of the Code, as amended, which tax is payable by the person paying for the admission. Children under 12 years of age are exempt from the imposition of the tax where the admission charge is less than 10 cents.

Sec. 1718(c) imposes as a penalty a sum equal to the amount of the admission tax upon the failure of the person or persons controlling the admission to collect the tax.

The Collector concedes that rides on the miniature gasoline automobiles and on the ponies were not within the terms of the statute and regulations, but says that, under the facts of this case the charges collected by appellees for other rides come within the purview of the Code as "admissions" to a place.

During each calendar year, appellees operated their park each day during a season beginning about April first and continuing to the middle of November, operation during other periods being impracticable because of weather conditions. During each season prior to April 1, 1948 (and also on April 23, 30, and May 1, 1948) appellees charged an admission tax as imposed by sec. 1700(a). On January 22, 1948, by letter, appellees requested a ruling from the Internal Revenue Department, Washington, D. C., on the taxability of their type of business, especially the pony rides. The Deputy Commissioner of Internal Revenue replied "that the admission tax was payable on the amusement devices, but that if pony rides * * * were conducted within the enclosure, and if a charge is made only for those parties who ride the ponies * * * and other persons are admitted to the enclosures free of charge, the charge is not for admission to a place and is not subject to the tax."

On February 28, 1948, appellees again wrote to the Deputy Commissioner, enclosing pictures of their devices as exhibits, and claimed all of their amusement rides were operated in the same manner as the pony rides, again requesting a ruling as to whether the other amusement devices were subject to an admission tax.

The Deputy Commissioner replied "that no tax should be levied, assessed, collected or paid in connection with tickets sold for use on the pony ride or the mineature gasoline automobile ride, but that a tax on admissions attached to each of the various other amusement devices operated * * * since the charges represent amounts paid for an admission to a place within the meaning of the Code."

Appellees collected no admission tax from their patrons from April 1 to November 30, 1948 (except on three days—April 23, April 30, and May 1, 1948 on which dates admission taxes were charged and remitted to the Collector.)

Thereafter appellees paid, under protest, $9,576.68 as admission tax and penalties for the period here involved, and on January 31, 1949, filed a claim for refund, stating that Kiddieland (1) "charges no admission to any place" and (2) that none of the rides operated by them were "places" within the meaning of sec. 1700(a), and (3) that the amounts paid by patrons were paid for rides and not for "admission to any place." This claim was rejected and this suit, to recover the penalties paid, followed.

Appellees urge, in support of their judgment, (1) that their charges were for rides on the various amusement devices and not for admission to a place, and (2) that patrons were not charged for the right and privilege of entering and seating themselves in or on the various devices, while the appellant contends that appellees' charges were made for the right and privilege of entering and seating themselves in or on the various amusement devices and enjoying the purpose for which they were operated, hence were charges for admission to a place within the meaning of sec. 1700(a), as amended, and are subject to the tax at the rate imposed in sec. 1650 of the Code.

As we view it, the sole question for determination is: whether sec. 1700(a), as amended, is applicable to the charges made, to anyone riding on the six rides in question under the facts here presented.

The trial court concluded: "Under the facts in this case, the charges assessed by the plaintiffs were not charges for admission to a place within the meaning of sec. 1700(a) of the Internal Revenue Code, but were charges for the privilege of riding upon the devices furnished by plaintiffs."

■ Where the ultimate finding is a conclusion of law or a determination of a mixed question of law and fact, we may substitute our judgment for that of the trial court. Exmoor Country Club v. United States, 7 Cir., 119 F.2d 961–963. Also in Orvis v. Higgins, 2 Cir., 180 F.2d 537–539, the court said: "Where a trial judge sits without a jury * * * Where the evidence is partly oral and the balance is written or deals with undisputed facts, * * * we may ignore the trial judge's finding and substitute our own".

Appellees contend that under the facts of this case the charges were not for admission to a place within the meaning of sec. 1700(a), but were charges for the privilege of riding upon the devices furnished by them as the District Court found.

Few, if any, admissions taxable under sec. 1700(a) are not accompanied by a use of the property or equipment to which the admittees' license extends. Wilmette Park District v. Campbell, 338 U. S. 411–418, 70 S.Ct. 195, 94 L.Ed. 205. The public was admitted to a place (the open park) without charge. The rides in question were situated in definite locations or places in the park. The public was admitted without charge to all such places for inspection, for the purpose of placing children on the rides or seeing them safely from the rides, and for the purpose of taking pictures, while such rides or places were not in motion. But those who wanted to use the amusement devices or equipment, for the purpose for which they were constructed, that is, to remain thereon while the rides were in motion, and to enjoy a complete ride, an admission charge was required and collected by appellees.

■ We conclude that all rides in question were located in fixed, definite, stationary spots or places in the park, that each and all, except the miniature gasoline autos and the pony rides, are component parts of definite, stationary structures constituting places within the meaning of sec. 1700(a), and that amounts paid by persons who took a complete ride thereon represent amounts paid for admission to a place and that the tax on admissions attached thereto. United States v. Koller, D.C., 287 F. 418; Twin Falls Natatorium v. United States, D.C., 22 F.2d 308; Exmoor Country Club v. United States, 7 Cir., 119 F.2d 961.

The judgment is reversed with directions to dismiss the complaint.