BEE'S OLD RELIABLE SHOWS, Inc. v. GLENN.

Civ. A. No. 2012.

United States District Court
W. D. Kentucky, Louisville.
July 16, 1952.

H. Cecil Kilpatrick, Washington, D. C., Marcus C. Redwine, Winchester, Ky., for plaintiff.

Henry L. Spencer, Sp. Asst. to Atty. Gen., Charles F. Wood, Asst. U. S. Atty., Louisville, Ky., for defendant.

MARTIN, Circuit Judge (sitting by designation).

### Findings of Fact

#### I.

The plaintiff, Bee's Old Reliable Shows, Inc., is a corporation existing under the laws of the State of Kentucky, with its principal office and place of business in Winchester, Clark County, Kentucky.

The defendant, Seldon R. Glenn, is, and was at all times hereinafter mentioned, the Collector of Internal Revenue for the United States for the Collection District of Kentucky.

#### II.

The plaintiff owned a traveling carnival in 1947 and 1948, which it operated in the months of April through October, 1947, and March through October 1948.

The carnival consisted of various shows, concessions, devices and rides for the amusement of the general public, the said devices and rides herein referred to being a Ferris wheel, merry-go-round, octopus ride, and three "kiddy" rides, namely, live ponies, cart ride, and train ride, and also a miniature automobile ride.

The carnival moved from town to town in the States of Kentucky, Tennessee, and Georgia, during the spring, summer, and fall, of the years 1947 and 1948.

The period of the stand or stay of the carnival in a town was from one day to two weeks, with the usual length of such periods being one week.

#### III.

All devices and rides operated by the plaintiff were movable being dismantled at the end of each stay in a town where the carnival showed, with the various parts and sections of the devices and rides being transported by truck to the next town where they were reassembled and as such placed in operation by assembling each of the said mechanical devices and rides, other than the said merry-go-round, and placing same in use by staking each of them to the ground to minimize vibration, shifting, etc., and said stakes were of wood or metal and were removed from the ground when the mechanical devices and rides were dismantled and made ready for transportation to the next site of the carnival, the weight of the assembled merry-go-round permitting its use without staking or other attachment to the ground.

None of the devices and rides of the plaintiff were enclosed by fence, tents, or otherwise, except for safety around the "Octopus" and chair-plane.

#### IV.

During the greater portion of the time of the seasons of 1947 and 1948, plaintiff's carnival was quartered and set up in a field, lot, or school yard readily accessible to the general public, and only the marquee and side walls (approximately 50 feet in length and 10 feet in height *) was used by plaintiff and through which its customers secured access to the midway.

In all instances, there was no fence or other enclosure around the carnival proper, except when same showed or was set up in a fair ground or ball park and except the customary canvas above mentioned, which is a general canvas ring around the entire carnival entrance or entrance to the carnival midway as mentioned above and not an enclosure around the individual rides and devices aforementioned within the carnival.

#### V.

The plaintiff charged 20 cents (including State and Federal tax) for admission of each person to the midway, except in those instances when the carnival was sponsored by a school or county fair association; that the County Fair Associations charged, received, and retained all funds for admittance to the Fair Grounds upon which plaintiff's carnival was showing, but no admission charge was made by the schools up-

* Height.

on which grounds the carnival exhibited. This charge for admission to the grounds did not entitle the patron to use any of the plaintiff's rides.

## VI.

The cost of riding upon the plaintiff's various mechanical devices, such as Ferris Wheel, merry-go-round, miniature automobile, and the like was from 10 cents to 25 cents, without any admission tax, State or Federal, being charged or collected therefor.

## VII.

The tickets employed by the plaintiff in the years 1947 and 1948 for admission to the midway of the carnival and to the various enclosed shows bore the price of the admission, and the amount of the State and Federal tax thereon, while the tickets for riding upon the various mechanical devices, aforementioned, bore merely the charge or cost of the ride.

## VIII.

During the calendar years 1947 and 1948 the plaintiff duly filed Admissions Tax Returns on or before their respective due dates, and reported and paid to the defendant the sums and taxes set out and itemized in Paragraph IV of the plaintiff's complaint, being the taxes based upon gate charges, shows charges, and rides charges, and the plaintiff is attempting to recover in this action the taxes paid on said rides charges in the amount of $8,882.45 for 1947 and $4,594.07 for 1948, as therein set out.

## IX.

The admission taxes paid by the plaintiff to the defendant upon "gate charges" and "show charges" as listed and itemized in Paragraph IV of the plaintiff's complaint, and as mentioned in Finding VIII above, were collected from the plaintiff's customers while the admission taxes paid to the defendant by the plaintiff upon "ride charges", as mentioned above in Paragraph VIII, were not collected from any persons using or enjoying the rides, but the amount of such latter admission taxes was remitted by the plaintiff to the defendant, involuntarily and under protest, out of the plaintiff's personal funds; and the amounts collected by the plaintiff from the public riding upon its various mechanical devices and rides represented only the fee or charge for such rides and did not include any admission tax.

## X.

On or about April 12, 1949, the plaintiff timely filed claims for refund, one for $8,-882.45 and the other for $4,594.07 covering the amounts sought to be recovered in this action. On November 4, 1949, the Commissioner of Internal Revenue duly disallowed the full amount of each of the claims for refund. A copy of each of the claims for refund is attached to the complaint filed. This action was timely commenced on October 27, 1950.

### Conclusions of Law

### I.

The statutes and Treasury Regulations applicable to this case may be set forth, in substance, as follows:

Sec. 1700 of the Internal Revenue Code, 26 U.S.C.A. § 1700, provides: "There shall be levied, assessed, collected, and paid * * *. A tax of 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place, including admission by season ticket or subscription" and that the tax imposed "shall be paid by the person paying for such admission."

Sec. 1715 provides: "Every person receiving any payments for admission * * * subject to the tax imposed by section 1700 * * * shall collect the amount thereof from the person making such payments", and that the amounts so collected "shall be paid to the collector * * *".

(1) Section 101.2 of Treasury Regulation 43 provides: "The tax is imposed on the 'amount paid for *admission* to any place', and applies to the amount which *must* be paid in order to gain admission to a place * * *. The Term 'admission' means the right or privilege to enter into a place", and sec. 101.03 of Regulation 43 provides: "The tax under sec. 1700(a) of the

Code is on the amount paid for admission to any place. 'Place' is a word of very broad meaning, and it is not defined or otherwise limited by the Code. But the basic idea it conveys is that of a definite enclosure or location. The phrase 'to any place' therefore, does not narrow the meaning of the word 'admission', except to the extent that it implies that the admission is to a definite enclosure or location."

Sec. 1650 of the Internal Revenue Code, as amended by Sec. 302(a) of the Revenue Act of 1943, c. 63, 58 Stat. 61, 26 U.S.C.A. § 1650, imposes a war tax rate effective as of April 1, 1944, of 1 cent for each 5 cents or major fraction thereof of the amount paid for admission to any place within the meaning of Sec. 1700(a) of the Code, as amended, which tax is payable by the person paying for the admission. Children under 12 years of age are exempt from the imposition of the tax where the admission charge is less than 10 cents.

## II.

The plaintiff's merry-go-round, Ferris wheel, roto-whip or Octopus ride, and train ride, were located in fixed, definite and stationary spots or places in lots, parks or recreational or fair grounds used by it in the various towns and places and were component parts of definite, stationary structures constituting places within the meaning of Section 1700(a) of the Internal Revenue Code, as amended, Title 26 U.S.C.A. § 1700 (a). The amounts paid by persons for rides on the several devices represent amounts paid for admissions to places and the tax on admissions attached thereto. See Fritz v. Jarecki, 7 Cir., 189 F.2d 445. Compare Twin Falls Natatorium v. United States, D.C., 22 F.2d 308; Exmoor Country Club v. United States, 7 Cir., 119 F.2d 961.

## III.

The assessment and collection of the taxes involved in this litigation were correct and proper. The plaintiff's complaint should be dismissed and the defendant awarded judgment for costs.