**EXECUTIVES CLUB OF LOUISVILLE v. GLENN.**

**No. 2220.**

United States District Court
W. D. Kentucky, Louisville Division.

Sept. 15, 1952.

W. J. Goodwin, Louisville, Ky., for plaintiff.

D. C. Walls, U. S. Atty., Louisville, Ky., Chas. F. Wood, Asst. U. S. Atty., Henry L. Spencer, Sp. Asst. to Atty. Gen., for defendant.

MILLER, Circuit Judge. (Sitting by designation.)

The plaintiff, Executives Club of Louisville, brought this action to recover from the defendant, Seldon R. Glenn, Collector of Internal Revenue, the sum of $1,387.30 with interest, which amount it contends was erroneously collected as a tax on the amounts paid by its members as club dues. The plaintiff contends that the amounts so paid to it by its members were not taxable either as club dues under § 1710(a) (1), Internal Revenue Code, 26 U.S.C.A. § 1710 (a) (1), or as amounts paid for admission to a place under § 1700(a) (1), Internal Revenue Code, 26 U.S.C.A. § 1700(a) (1). The defendant concedes that the amounts paid are not taxable as club dues, but contends they are taxable as being amounts paid for admission to a place.

### Findings of Fact

The plaintiff is a non-profit unincorporated association organized on November 1, 1941, with its business address at 1264 Starks Building, Louisville, Kentucky. The defendant Glenn is the Collector of Internal Revenue for the District of Kentucky.

During the period from April 1, 1946 through May 31, 1949, the plaintiff paid out of its treasury to the defendant Collector the sum of $1,387.30 which was reported and paid as tax on club dues. Apparently, the Commissioner conceded that the amounts were not taxable as club dues, as he had ruled that since the principal purpose and activities of the Executives Club of Louisville was the presentation of a series of lecture programs each year, the sums paid by members as so-called membership fees were in fact amounts paid for admission by season ticket or subscription and were subject to the tax on admisssions imposed by § 1700(a), Internal Revenue Code. The plaintiff had been notified of this ruling and of its liability for the tax

under date of April 12, 1946. On September 27, 1949, the plaintiff filed with the defendant a claim for refund of the amount paid in by it. The claim for refund stated: "The annual fees collected from members are not in the nature of admissions as described in Section 1700(a) of the Internal Revenue Code." By letter of May 12, 1950, the Commissioner notified the plaintiff that the Bureau adhered to its earlier ruling; that since the amount paid as tax on club dues approximated the amount of admissions tax due, such amount would be considered to have been paid as the penalty imposed under § 1718(c), Internal Revenue Code, 26 U.S.C.A. § 1718(c), in lieu of the tax; and that the claim for refund was rejected in full.

This action followed. It was stipulated by the parties at the trial that the case would be tried on the issue of whether the alleged dues were in fact admission charges taxable under § 1700(a), Internal Revenue Code, and if they were not, the plaintiff would be entitled to the recovery.

The plaintiff has a membership of 225 and usually has but a few vacancies at a time. The members are executives of corporations, business men, and professional men. Applications for membership are submitted to the Board of Directors for approval and election. There is an initiation fee of $10 upon joining. The members also pay to the Club an amount designated as "dues", which was at first $10 and later increased to $15 per year, which is the payment in controversy. This payment is made in advance for one year at the time when the member joins the Club, and is due annually on that date thereafter.

The purpose of the Club is educational and cultural, affording the members an opportunity to discuss the problems and questions of the day, and to hear speakers on such questions. The Club has about six or seven meetings each year, at which time it holds a dinner meeting with an after-dinner speaker who talks on the subject selected for the meeting; followed by a question period. The Club has no quarters of its own, and has usually held its dinner meeting at the Pendennis Club in Louisville, the Audubon Country Club of Louisville,

or the Seelbach Hotel. The dinner meeting is limited to members of the Club, their wives and guests invited by the members. Each member attending pays for the dinner for himself, his wife and any guest he might have. Usually the amount so charged and paid for the dinner is not enough to meet the total charge made by the Club or Hotel which serves the dinner, and the plaintiff has paid in addition from its own funds a sufficient amount to make up a deficit of from seven and one-half cents to ten cents per person. Usually less than 50% of the members attend, a number of them bringing their wives. There are from ten to twenty guests in addition. The average number of diners is approximately a hundred. Non-members of the Club who are not invited guests can not attend. A member does not present a ticket or card for admission. The annual dues paid by the member entitles him to attend all of the meetings, but no refund is made to him upon his failure to attend any one or more of the meetings held. The annual payment of $15 by the member to the Club is the only payment made by him to the Club. He receives a membership card and is entitled to participate in all the activities of the Club without any further charge. There is no obligation on the part of the Club to have any stated number of meetings, the number and dates of such meetings being in the discretion of the Board of Directors. The program for the ensuing year is usually arranged and adopted by April covering the ensuing twelve months. A member of the Club is entitled to attend the meetings of Executives Clubs in other cities. A member also received an intangible benefit from his membership in his satisfaction in being a member of such an organization, in the acquaintances made thereby, and in the good fellowship enjoyed at the dinner meetings.

The speaker for the dinner meeting is usually a person experienced in the matter to be discussed. The speakers cover a wide diversity of subjects including art, travel and economics. The Club pays the speaker a fee ranging from $150 to $1,200. Sometimes a qualified speaker is obtained without charge. In any event, the Club endeavors to stay within its revenue in the total amounts paid to the speakers throughout the year. In addition to serving as the speaker for the dinner meeting, the speaker holds newspaper interviews the day before the meeting and usually makes a radio appearance during the afternoon preceding the dinner meeting. At some meetings there are moving pictures without a speaker. There is no music or floor show or similar type of entertainment.

There is a National organization, entitled Associated Executive Clubs, Inc., a Delaware corporation, which assists in organizing executive clubs throughout the country, and so assisted in the organization of the plaintiff. The plaintiff entered into a written working agreement with the Associated Executive Clubs on November 1, 1941, under which the National organization agreed to furnish promotional service and to assist in the continuance of the local Club. Under the working agreement the plaintiff "shall exist for the sole purpose of promoting educational, patriotic, cultural, and scientific interest" in Louisville and Kentucky. The agreement also provided "All speakers shall be secured through party of the first part during entire life of the Club," the party of the first part being the National organization. This arrangement was followed by the plaintiff during the first part of its existence, but was shortly thereafter changed by agreement between the parties so as to permit the plaintiff the option of securing its speakers through the National organization or directly through its own negotiations. The plaintiff has in each year of its existence obtained some of its speakers through the National organization. In either event, the plaintiff paid the speaker direct, and in case he was obtained through the National organization the speaker in turn paid a commission to that organization.

The plaintiff has no club house or club rooms and pays no rent, and operates out of the business offices of its officers. Its officers and directors do not receive any salary for their services. Its secretary, who is an employee of one of the officers, is paid $25 per meeting. The expenses of the Club consist of printed stationery running approximately from $100 to $130 per year, stamps in the amount of approximately $50

per year, the printing of notices sent to members in the amount of approximately $35 to $40 per month, one or two luncheons per month for the Board of Directors of the approximate cost of from $16 to $18 per luncheon, the dinner deficits above referred to, and the fees to speakers. The Club spends practically all of its income each year for speakers and expenses. If a deficit is incurred it is met by reducing expenses, usually by the reduction in the amount of fees paid to the speakers.

## Conclusions of Law

This action arises under §§ 1650 and 1700 (a), Internal Revenue Code, 26 U.S.C.A. §§ 1650, 1700(a). Jurisdiction exists under § 1340, Title 28, U.S.Code.

The defendant's answer raises no issue as to the plaintiff's standing to sue for refund, and as the recovery here sought is for penalties paid from the plaintiff's general revenue fund, § 1718(c), Internal Revenue Code, action by it properly lies. Wilmette Park District v. Campbell, 338 U.S. 411, 414, 70 S.Ct. 195, 94 L.Ed. 205.

Section 1700(a) (1), Internal Revenue Code, imposes "A tax of 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place, including admission by season ticket or subscription." Section 1650 changed the tax to 1 cent for each 5 cents or major fraction thereof. The tax is required to be paid by the person paying for such admission.

The defendant contends that the so-called payment of dues is in effect the purchase of a season ticket for admission to the dinner meetings throughout the year; that in substance such admission is the only benefit received by the club member in exchange for the payment; and that under such circumstances the payment is an admission charge rather than dues. The plaintiff contends that a member receives for his payment materially more than admission to the dinner meetings, and that its organization and method of operation results in the proper classification of the payments as dues, which in its case are non-taxable.

■ The fact that the party to whom an admission fee is paid is a non-profit organization does not defeat the tax. Wilmette Park District v. Campbell, supra.

■ The fact that the organization to which an admission is paid is a club or an organization with a selected and elected membership does not defeat the tax. Exmoor Country Club v. United States, 7 Cir., 119 F.2d 961, 963.

■ The hotels and clubs at which the plaintiff holds its meetings are "places" within the meaning of the taxing statute. Wilmette Park District v. Campbell, supra; Fritz v. Jarecki, 7 Cir., 189 F.2d 445, 447.

■ The tax on admissions will not be defeated by classifying the charge under a different name, or by some subterfuge, where the true nature of the charge is for admission to the place which the patron enters. Charges in the following cases, made in lieu of admission charges, were held to be taxable as admission charges. Fritz v. Jarecki, supra, where a charge was made for using amusement devices in amusement park. United States v. Koller, D.C., 287 F. 418, involving a rental charge for skates at a skating rink. Twin Falls Natatorium v. United States, D.C., 22 F.2d 308, involving a rental charge for bathing suit and towel at a swimming pool. Chimney Rock Co. v. United States, 63 Ct.Cl. 660, certiorari denied 275 U.S. 552, 48 S.Ct. 115, 72 L.Ed. 421, involving a charge for the use of a private road to enter a pleasure resort. See: Bee's Old Reliable Shows, Inc. v. Glenn, D.C., 107 F.Supp. 1016. But it was not the purpose of this section of the statute to tax amounts paid to an organization by its members which are essentially "dues", as such term is commonly understood. Dues are taxable under an entirely different section of the statute, and in some instances under that section are not taxable at all. §§ 1710(a) and 1711, Internal Revenue Code, 26 U.S.C.A. §§ 1710(a), 1711.

■ Both "dues" and an "admission charge" involve the element of the privilege or right, not available to the public generally, to enter a place and to participate in the activities furnished therein. When the "admission charge" is in the form of a season ticket for the purchaser and his fam-

ily, the inherent nature of the two payments comes even closer together. Accordingly, I do not think that the right to enter and use is the decisive test in determining that a payment, designated as "dues", is in fact an "admission charge." The term "dues" "derives from the Anglo-Saxon 'cleofan' and indicates a division of the reckoning. The theory is one of joint expenditure." Merion Cricket Club v. United States, 3 Cir., 119 F.2d 578, 579. The Supreme Court said in White v. Winchester Club, 315 U.S. 32, 41, 62 S.Ct. 425, 430, 86 L.Ed. 619 that consideration of the nature of club activity is a necessary preliminary to the formulation of a test of what constitutes a due or membership fee, and that "So far as finances go, the fundamental notion of club activity is that operating expenses are shared without insistence upon equivalence between the proportion of an individual's contributions and the proportion of the benefits he receives." And that "payment for the right to repeated and general use of a common club facility for an appreciable period of time has that element and amounts to a 'due or membership fee' if the payment is not fixed by each occasion of actual use." In that case a payment to a club by a member, in addition to regular dues, for the privilege of using the golf course on certain days, but not unlimited use, was held to be dues, and taxable as such. In that case, the facility which the member was entitled to enjoy in return for his payment was a single facility and limited to specified days, which features in the case at bar are stressed by the defendant as characterizing the payments as admission charges.

In keeping with the foregoing concept of "dues", I am of the opinion that the payments in the present case are essentially dues, rather than admission charges. Newland v. Penwell, D.C., 85 F.Supp. 294, appeal dismissed, 9 Cir., 180 F.2d 551. The club is a bona-fide organization with national associations, and in my opinion the payment is not classified as "dues" for the purpose of avoiding the tax on admissions, and is not a subterfuge. The payments are for the purpose of financing the operations of the Club and for paying its expenses, and are used for that purpose. The fees to the speakers, whom the members enjoy, are the chief expenses, but they are not the only expenses. The speakers, in addition to their talk at the dinner meeting, give newspaper and radio interviews for educational purposes, which services, being covered by the fee, are paid for out of the "dues" paid by the members. This is more in the nature of an educational contribution than an admissions charge. The members receive in exchange for their dues, in addition to hearing the speaker, the benefit of material work and planning on the part of their officers and directors, who serve without compensation, an element which is usually lacking in the concept of an admission charge, where the cost of management is necessarily reflected in the charge. At times they receive the services of speakers without charge. The out-of-town privileges and the intangible benefits are by-products of membership, and are elements not incident to the usual admission charge. The amount paid by a member is in no way based on the proportion of the total benefits which he receives. The guests, unlimited in number, who attend the meetings, make no payment to the Club for the privilege of attending and participating, and no ticket is exacted of them for admission. This is in sharp contrast to the usual admission charge. As an overall picture the fundamental plan of operation seems clearly to be one of joint expenditure with "a division of the reckoning" among the members. Merion Cricket Club v. United States, supra. By Bureau letter (D. S. Bliss) of June 29, 1945, it was ruled that a general assessment to cover expenses of a private dance given by a college fraternity against all members, regardless of whether or not they attended, the fraternity retaining for future use any part of the assessment not used, was not taxable as an admission charge. By Special Ruling of March 22, 1950, it was ruled that the Jefferson-Jackson dinner, for which those attending paid $100 or more per person was not subject to the admission tax. I do not believe it was the intention of Congress to treat payments to a bona-fide club for the limited purpose of meeting its expenses, as are the payments in this case, operating cooperatively throughout a

period of years in a recognized and approved field of activity, as admission charges, as that term is generally and commonly understood.

■ The payments in question, being held to be "dues" to a club, which is not a social, athletic, or sporting club or organization within the provisions of § 1710(a) (1), Internal Revenue Code, are accordingly not taxable either as "admission charges" or "dues". Tidwell v. Anderson, 2 Cir., 72 F.2d 684; Cosmos Club v. United States, 42 F.2d 321, 70 Ct.Cl. 366; Washington Club v. United States, 49 F.2d 656, 69 Ct. Cl. 621.

Counsel for plaintiff will tender appropriate judgment for entry.