**LINCOLN DINNER CLUB, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Formerly Civ. No. 41–54.**

United States District Court
D. Nebraska, Lincoln Division.
June 13, 1956.

instituted this action to recover, as unlawfully exacted and collected from it, the sum of $1,016.96, with interest on the several portions thereof from the respective dates of their payment, by it paid between April 29, 1952 and January 15, 1954 as taxes, ostensibly under Section 1700(a) of the Internal Revenue Code of 1939, 26 U.S.C. § 1700(a), upon the amounts collected by it from its members as membership dues, but which, the defendant has contended and does contend, are "amounts paid for admission to a place". Jurisdiction unquestionably exists and is not challenged. Defendant takes the position that the taxes were lawfully collected, and denies liability for their return.

The facts are not seriously in controversy although the parties disagree respecting the conclusion to be drawn from them. The following facts are found to be true.

Plaintiff is, and at all material times has been, an unincorporated association. It was organized on or about March 1, 1942 and, at all material times had its business address at 909 Federal Securities Building, but now has its business address at 322 South Eleventh Street, both in Lincoln, Nebraska. It has and has had no office or quarters of its own and its business address, supra, is and has been the address of its secretary from time to time.

Plaintiff's government is conducted within the framework of certain by-laws from which the following excerpts are taken:

"Article II

"Purpose

"Section 1. The purpose and object of this organization shall be, first, to entertain from time to time men and women of national and international repute in the affairs of the world; second, to disseminate knowledge; third, to promote scientific inquiries; fourth, to provide means of services, recreation, fellowship and entertainment for its membership.

Allen W. Field and Lewis R. Ricketts (Field & Ricketts) of Lincoln, Neb., for plaintiff.

Donald R. Ross, formerly U. S. Atty., and William C. Spire, U. S. Atty., Omaha, Neb., for defendant.

DELEHANT, District Judge.

Within the jurisdictional grant of Title 28 U.S.C. § 1346(a) (1), plaintiff

"Article III

"Membership

"Section 1. Only adult persons of good moral character shall be eligible to membership in this Club, and not to exceed 35 members shall be women, with the exception that when a member dies, his membership shall be available to his widow. The membership shall be limited to 265 members, provided, however, that this number may be changed by the Board of Directors.

"Section 2. The Club members at any business or dinner session may, at their discretion, elect a person or persons as honorary members.

"Section 3. No person shall be admitted to this Club except on invitation of the Board of Directors; after an invitation has been extended, no adverse action shall be taken by the Board of Directors.

"Section 4. Any member may resign from the Club, and such resignation shall become effective immediately upon its delivery to the Board of Directors, provided all indebtedness of such member has been paid, including his dues for the year in which the resignation becomes effective.

"Article V

"Meetings

"Section 1. The Board of Directors shall arrange for at least six (6) dinners each year, at such time and place and cost and providing such entertainment as in their judgment shall best carry out the purpose of this organization.

"Section 2. The Board of Directors shall designate the meetings at which ladies may be invited, at which times any member of the Club shall be entitled to entertain one or more ladies as guests.

"Section 3. Members may bring as guest to any meeting men who live out of the city or men who are members of the armed forces of the United States. Provided, however, that at not more than two meetings each year the Board of Directors may provide for 'local guest night' at which time each member may bring local guests.

"Article VI

"Dues

"Section 1. The initial membership fee shall be ten dollars ($10) which shall be paid along with the first years dues of ten dollars ($10), total twenty dollars, upon acceptance of the invitation for membership.

"Section 2. The annual dues shall be ten dollars payable annually in advance.

"Section 3. Any member being six months in arrears in the payment of dues shall be automatically suspended, but may be re-instated upon payment of arrears of dues on application to the Board of Directors."

Plaintiff has approximately two hundred sixty-five memberships. Applications for membership are by invitation only and must be approved by the directors. Upon one's election to membership there is an initial fee of ten dollars, and each member is required to pay an annual amount of ten dollars in advance, that is to say, before the opening of each club year.

Plaintiff holds at least six dinner meetings each year, at each of which a speaker talks on a selected subject and the address is followed by a question and answer period. Those speakers are frequently provided through arrangements with Associated Executives Clubs Inc., a Delaware corporation, with which plaintiff has a written working agreement, and which corporation assists in the organization and promotion of local executives clubs throughout the United States and acts as a booking agency for speakers for the local clubs.

The "working agreement" mentioned in the last preceding paragraph, exclusive of signatures, is in the following language:

"Working Agreement

"Devoted to a Better Acquaintance
Among America's Business and
Professional Aristocracy

"This Working Agreement enter-
ed into this 11 day of March, 1942
between Associated Executives
Clubs, Inc., a Delaware corporation,
party of the first part and the under-
signed persons forming Lincoln
Dinner Club, parties of the second
part.

"Whereby it is mutually agreed
that said party of the first part will
assist parties of the second part in
formation and continuance of a local
Executives Club in above-named
city. Party of the first part agrees
to furnish, at its own expense, pro-
motional service to assist parties of
the second part in completing club
membership. The club shall exist
for the sole purpose of promoting
educational, patriotic, cultural, and
scientific interest in above named
city and state.

"It is mutually agreed that one
dollar per member shall be allotted
for local budget during first fiscal
year and that all other income from
initiation fee and dues, until end of
first fiscal year on last day of Feb.
28, 1943, shall be used by party of
first part for organization work and
guest speakers until end of first
fiscal year. Fifty per cent of all
collections shall be paid to party of
first part as collected, and balance,
after deducting $1.00 per member
for local budget, shall be remitted
in equal instalments on dates speak-
ers appear. In case local expenses
exceed $1.00 per member, party of
the first part agrees to defray all ex-
penses approved in writing by its
representatives.

"First party agrees to furnish
seven guest speakers during first
fiscal year, also membership cards,
newspaper mats, news stories, etc.
Local Club agrees to furnish dining
room, to pay federal, state and local
taxes if any should be required, and
any other necessary local expense,
same to be defrayed from local
budget, as specified above. An ini-
tiation fee of $5.00 shall be collected
for each member admitted to the
Club at any time. Annual dues
shall be $10.00 per member payable
in advance. (Dues shall be in addi-
tion to initiation fee for first year
of each membership.) Each mem-
ber shall pay for meals in addition to
initiation fee and dues.

"After first year, all dues and ini-
tiation fees shall be used by local
Club to pay speakers and for neces-
sary local expense. Payment for
each speaker shall be made on date
of his appearance. It is agreed that,
in contracting for speakers, party
of the first part acts as agent of
local Club, that such contracts are
non-cancelable, and that party of
the first part assumes no obligations
for any expense except speakers
fees and local expense approved in
writing by First Party or its agents.

"All speakers shall be secured
through party of first part during
entire life of the Club. During first
fiscal year party of first part is au-
thorized to select guest speakers at
its discretion. After first year,
speakers shall be approved in writ-
ing at a personal meeting with rep-
resentative of first party, or notice
of the selection of each speaker
shall be submitted by first party in
writing or by wire to local secre-
tary. If name of speaker is sub-
mitted by wire, local secretary shall
have forty-eight hours in which to
wire veto on speaker offered; if
submitted by letter, local secretary
may file written veto at any time so
that it will reach National office
within ten days of time original
offer is postmarked at National of-
fice. If no veto is filed within above
time, speaker shall be considered ap-
proved and first party is authorized
to contract definitely for same. For
speakers appearing without charge
or for expenses only, a service fee

of $25.00 shall be paid by local Club to party of first part after first year. Local Club agrees to grant reciprocity of membership to all men's dinner clubs associated with party of the first part.

"No local person shall be liable under any circumstances for any obligation except local expense incurred without approval of first party, or its representative. First party shall have right to reorganize local Club should death, removal or other cause ever leave local organization without proper officers for conduct of its business."

Dinner meetings are usually held by plaintiff in the ballroom of Cornhusker hotel, in Lincoln. Attendance at those meetings is limited to members of the club, their wives and guests invited by members. Each member attending any such dinner meeting must make a reservation in advance and pay to the Cornhusker hotel its dinner charge for himself, his wife, and any guest or guests whom he may have invited.

Plaintiff usually pays each dinner speaker a fee ranging from $125 to $450, but endeavors to stay within its revenue from fees and dues, in its total annual outlay for amounts paid to speakers. On occasion a qualified speaker is obtained without charge to plaintiff. Apart from expenditures for minor administrative expense, (see further below) plaintiff each year spends practically all of its annual income in fees for its dinner speakers. There is no music, or floor show, or similar type of entertainment at plaintiff's dinner meetings.

On May 23, 1947, the Commissioner of Internal Revenue ruled that plaintiff's membership fees and annual payments were charges for admission and subject to tax under the provisions of Section 1700, Internal Revenue Code of 1939.

For the period involved plaintiff paid to the Collector (or Director as the case may be) of Internal Revenue for the District of Nebraska, in pursuance of timely filed reports on form 727, taxes thus exacted as follows:

| "Period for which Tax was paid | Amount of Tax | Date of Payment |
|---|---|---|
| March, 1952 | $427.67 | Apr. 29, 1952 |
| May, 1952 | 13.50 | June 16, 1952 |
| July, 1952 | 16.00 | Aug. 29, 1952 |
| September, 1952 | 52.31 | Oct. 29, 1952 |
| December, 1952 | 11.83 | Jan. 23, 1953 |
| March, 1953 | 346.00 | Apr. 16, 1953 |
| April, 1953 | 29.49 | May 31, 1953 |
| June, 1953 | 39.00 | July 22, 1953 |
| July, August and September, 1953 | 55.32 | Oct. 27, 1953 |
| October, November and December, 1953 | 25.84 | Jan. 15, 1954" |

The aggregate amount of such payments is $1,016.96.

Plaintiff filed timely claims for refund of the taxes thus assessed and paid, which claims were rejected through registered letters from the Commissioner of Internal Revenue.

This action was brought in the manner and within the time allowed by law.

The foregoing facts are made clearly to appear from the pleadings herein and a factual stipulation between the parties upon which principally the action was tried. Through evidence adduced upon the trial the following further facts were shown and are found.

Plaintiff issues to each of its members an annual membership card. But ex-

hibition of these cards is not the test of admission to its dinner meetings. Such admission is obtained upon the basis of one's actual membership and payment of the hotel's charge for each dinner attended.

About one-half of plaintiff's members attend each dinner meeting.

In practical experience plaintiff's only income is that received in the way of initial fees and annual fees from its members; and the initial fee is ten dollars and the annual fee is also ten dollars. About twenty-five percent of such income is actually expended in necessary administrative costs and about $2,000 is made available each year for speakers' fees.

The plaintiff has no activities outside its dinner meetings, has no club rooms, and itself maintains no facilities for meetings or for entertainment.

A member of plaintiff receives no refund or abatement upon his annual fees on the score of his nonattendance at one or more or even all of its dinner meetings.

Members of plaintiff, in actual experience, are recruited from the leading business and professional people of Lincoln, Nebraska.

The subjects usually discussed by speakers at plaintiff's dinner meetings have to do with world problems, economics, social questions, travel and the like, though with substantial liberality in the selection of titles and subject matter.

Not all of plaintiff's dinner speakers are provided by, or procured through, Associated Executives Clubs, Inc. Some are obtained through direct negotiation or invitation by plaintiff and they may be persons who reside in Lincoln or residents of any other community.

On the occasion of their appearances in Lincoln, plaintiff's speakers sometimes also address or appear at meetings of different organizations of a cultural, educational, religious or other public character; but such outside appearances are not usually the concern of plaintiff, which acts largely as an intermediary in arranging them out of its interest in providing its vicinity with inspirational and informative programs.

Members of plaintiff consider that they derive, and do derive, from their membership all those benefits which may accrue to them from hearing its dinner speakers, from discussions which ensue after and incident to the formal programs, from occasionally visiting with the speakers, from encounters with fellow members during the dinner meetings, from their participation in refining and elevating service to their community, and from occasional contacts with other affiliated clubs and their members.

As indicated in the working agreement with Associated Executives Clubs, Inc., supra, plaintiff grants reciprocity of membership to other men's dinner clubs affiliated with Associated Executives Clubs, Inc. Such other clubs likewise grant like reciprocity to it. By virtue of such reciprocity a member of plaintiff is entitled to attend a dinner meeting of any other club affiliated with Associated Executives Clubs, Inc. In practice this privilege is sometimes, though not frequently, exercised but is found to have some significance and value.

The organization of plaintiff and the adoption of its by-laws, including its provision for initial fees and annual dues, were effected in complete good faith and without any element of subterfuge, either conscious or in practical effect. The definition of such initial fees and annual dues was not made to disguise the true character of such impositions or to avoid their taxability.

The ultimate decision in the suit must turn upon the true character of the fees, initial and annual, paid regularly to plaintiff by its members. Unless they fall within the definition of "the amount paid for admission to any place, including admission by season ticket or subscription", Section 1700(a) Internal Revenue Code of 1939, they were not the proper subject of the tax which was paid. It is only under that section of

the statute that the taxes whose recovery is now sought were or could have been exacted or paid. It is agreed between the parties, with the court's concurrence, that plaintiff's receipts from its members were not taxable as dues under Section 1710(a) of the Internal Revenue Code of 1939, 26 U.S.C. § 1710(a). Their annual amount is manifestly below the exemption provided by that section.

Subject to the operation of Section 1650 imposing special war tax rates, infra, the controlling statutory language, taken from Section 1700(a) of the Internal Revenue Code of 1939 is:

"There shall be levied, assessed, collected, and paid—

"(a) Single or season ticket; subscription—(1) Rate. A tax of 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place, including admission by season ticket or subscription. In the case of persons (except bona fide employees, municipal officers on official business, and children under twelve years of age) admitted free or at reduced rates to any place at any time when and under circumstances under which an admission charge is made to other persons, an equivalent tax shall be collected based on the price so charged to such other persons for the same or similar accommodations, to be paid by the person so admitted."

Of the foregoing language only the first sentence is actually involved here. But the second is quoted for its somewhat instructive intimation of the nature and character of the "admissions" and "places" which the congress had primarily in mind in the imposition of the tax. It may be added that under section 1650, imposing "war tax rates" of certain miscellaneous taxes the rate of tax upon admissions was raised to 1 cent for each 5 cents or major fraction thereof and that the higher rate was in effect during the interval embraced in this suit.

Administrative regulations promulgated under the cited statute include the following language from Section 101.2 (see Treasury Regulations 43):

"(a) The tax is imposed on 'the amount paid for admission to any place', and applies to the amount which must be paid in order to gain admission to a place. (see Section 101.4) The term 'admission' means the right or privilege to enter into a place."

and also:

"(c) The amount paid for admission by season ticket is a fixed sum which entitles the holder to admission on definite dates to a series of scheduled attractions, or to admission at all times during the season, and the form of the ticket is not controlling.

"(d) A subscription ticket is one which is issued to a person who subscribes a sum of money to the expense of an entertainment or who agrees to bear a portion of the expense thereof when the amount is ascertained.

"(e) An amount paid to become regularly entitled to the privileges of a club or other organization, as members or otherwise, is not an 'amount paid for admission' even though one of the privileges be the right to enter a club-house, club grounds, gymnasium, swimming pool, or the like. But where the chief or sole privilege of a so-called membership is a right of admission to certain particular performances or to some place on a definite number of occasions (as contrasted with a more or less unlimited right to enter a club-house or other place as many times as desired during a year or some other period), then the amount paid for such so-called membership is an 'amount paid for admission' within the meaning of the Code. An entirely different tax is levied on amounts paid as initiation

fees or as dues or membership fees to certain classes of clubs or organizations, and also upon life members of such clubs, by section 1710 of the Code."

Counsel correctly agree that the validity of the tax exacted from and paid by plaintiff has to be determined by the substance of the transaction which was taxed rather than by the names by which either plaintiff or the Commissioner of Internal Revenue have characterized the operation, and especially the amounts paid to plaintiff by its members. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; Griffiths v. Commissioner of Internal Revenue, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001; Executives Club of Louisville v. Glenn, D.C., 107 F.Supp. 668. Thus, the designation of the annual membership payments as dues, which plaintiff's by-laws have always made, would be inadequate to obviate their taxability if they were actually "amounts paid for admission to any place". It is recalled at this point that in such characterization, as in its entire organizational history, plaintiff has consistently acted in good faith. Admittedly, that innocence of deceit may not serve it to avoid a conclusion here of taxability. But it is not wholly insignificant, for it repels any inference of liability to taxation rooted in an attempt to circumvent a tax law.

Within the period involved, club or organization dues were taxed under the provisions of Section 1710(a) of the Internal Revenue Code of 1939, the first three sections of which follow:

"(a) Rate. There shall be levied, assessed, collected, and paid—

"(1) Dues or membership fees. A tax equivalent to 11 per centum of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year.

"(2) Initiation fees. A tax equivalent to 11 per centum of any amount paid as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $10 per year.

"(3) Life memberships. In the case of life memberships, a tax equivalent to the tax upon the amount paid by active resident annual members for dues or membership fees other than assessments, but no tax shall be paid upon the amount paid for life membership. In such a case, the tax shall be paid annually at the time for the payment of dues by active resident annual members."

The tax rate under the last cited Act was also increased to twenty percent under Section 1650.

Under the applicable regulations (Section 101.25 Treasury Regulations 43, see p. 1486 of Federal Tax Regulations 1956) social clubs are defined and explained for the purposes of the tax last mentioned in this manner:

"Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Code, unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but if the social features are a material purpose of the organization it is a 'social * * * club or or-

ganization' within the meaning of the Code. An organization that has for its exclusive or predominant purpose religion or philanthropic social service (or the advancement of the business or commercial interests of a city or community) is clearly not a 'social * * * club or organization'. Most fraternal organizations are in effect social clubs, but if they are operating under the lodge system, or are local fraternal organizations among the students of a college or university, payments to them are expressly exempt."

The course of judicial decision upon the taxability of receipts of the character before the court may be noted very briefly, for the reported cases are few and without substantial disagreement. By the same token it has to be recognized that not many courts appear to have passed upon the issue. And those that have ruled in relation to it do not include the Supreme Court or the Court of Appeals for the Eighth Circuit. Hence, this court may consider that its action is not controlled by earlier rulings that are strictly binding upon it, however persuasive they may be. Those rulings are not on that account to be disregarded but should be, and are, studied for their reasoning and conclusions.

In Newland v. Penwell, D.C.Mont., 85 F.Supp. 294, opinion filed January 13, 1949, the district court considered the liability for the "admissions" tax of the membership fees, in the nature of initiation fees and annual dues of the Butte Executives Club and granted judgment for the recovery of the taxes paid on the ground that they were invalidly collected. It may not be concluded that the opinion is significantly instructive in and of itself, for it does not adequately analyze the character of the club or its dues or fees. The ruling was appealed and the appeal was first dismissed without opinion. Thereafter, upon a petition for rehearing an opinion was filed February 21, 1950 in Penwell v. Newland, 9 Cir., 180 F.2d 551, denying the petition for rehearing, but solely on the ground that the attempted appeal had been taken by a "non existent person" and the Court of Appeals was without jurisdiction. So, the ruling of the Court of Appeals is also presently without significance.

But that was not the end of litigation upon the subject with direct relation to the Butte Executives Club. In 1947 and again in 1948 admissions taxes were collected from it based upon the amounts of its annual dues and it sued to recover such taxes. The district court held for the government and against the club (and also three of its members who joined as plaintiffs in the action). No reported opinion reflecting that ruling has been called to this court's attention or found by the writer hereof. But appeal was taken from the judgment, which resulted in the opinion in Newland v. United States, 9 Cir., 220 F.2d 925, filed March 28, 1955. In its ruling the Court of Appeals, while affirming the judgment as against the individual plaintiffs for their want of a personal right of recovery, reversed it as to the club itself and directed the entry of judgment in its favor. Doing so, it held the dues collected by the club from its members, to have been immune to taxation as amounts paid as admissions. And the opinion analyzed the organizational structure of the club, its practice in the amount, manner of collection and application of its initial fees and annual dues and its affiliation with and organization through Associated Executives Clubs, Inc. In all those respects the Butte Club was strikingly similar to, if not identical with, the present plaintiff. Hence, there is a real parity between the ninth circuit case and this one. And since the Butte Club was the same one which was involved in Newland v. Penwell, supra, the district court's ruling in that case is by that circumstance accorded added present significance by the light cast upon it in Newland v. United States, supra.

Meanwhile, on September 15, 1952 an opinion had been filed in Executives Club of Louisville v. Glenn, supra [107 F. Supp. 671], which was a suit by the designated club to recover taxes collected from, and paid by, it upon its membership fees and dues on the premise that they were amounts paid for admission to a place. That club, too, was promoted by, and affiliated with Associated Executives Clubs, Inc. And its plan of operation was essentially indistinguishable from that of plaintiff. In the opinion (written incidentally by Judge Miller of the Court of Appeals, Sixth Circuit, for several years a distinguished judge of the District Court for the Western District of Kentucky, then sitting by designation), the court recalled the club's operations corresponding essentially with the summary of plaintiff's practices already detailed herein and concluded that its receipts from its members were essentially dues rather than admission charges. It is not inappropriate to quote the following portions of the opinion:

"Both 'dues' and an 'admission charge' involve the element of the privilege or right, not available to the public generally, to enter a place and to participate in the activities furnished therein. When the 'admission charge' is in the form of a season ticket for the purchaser and his family, the inherent nature of the two payments comes even closer together. Accordingly, I do not think that the right to enter and use is the decisive test in determining that a payment, designated as 'dues', is in fact an 'admission charge.' The term 'dues' 'derives from the Anglo-Saxon "cleofan" and indicates a division of the reckoning. The theory is one of joint expenditure.' * * *

"In keeping with the foregoing concept of 'dues', I am of the opinion that the payments in the present case are essentially dues, rather than admission charges. Newland v. Penwell, D.C., 85 F.Supp. 294, appeal dismissed, 9 Cir., 180 F.2d 551. The club is a bona-fide organization with national associations, and in my opinion the payment is not classified as 'dues' for the purpose of avoiding the tax on admissions, and is not a subterfuge. The payments are for the purpose of financing the operations of the Club and for paying its expenses, and are used for that purpose. The fees to the speakers, whom the members enjoy, are the chief expenses, but they are not the only expenses. The speakers, in addition to their talk at the dinner meeting, give newspaper and radio interviews for educational purposes, which services, being covered by the fee, are paid for out of the 'dues' paid by the members. This is more in the nature of an educational contribution than an admissions charge. The members receive in exchange for their dues, in addition to hearing the speaker, the benefit of material work and planning on the part of their officers and directors, who serve without compensation, an element which is usually lacking in the concept of an admission charge, where the cost of management is necessarily reflected in the charge. At times they receive the services of speakers without charge. The out-of-town privileges and the intangible benefits are by-products of membership, and are elements not incident to the usual admission charge. The amount paid by a member is in no way based on the proportion of the total benefits which he receives. The guests, unlimited in number, who attend the meetings, make no payment to the Club for the privilege of attending and participating, and no ticket is exacted of them for admission. This is in sharp contrast to the usual admission charge. As an overall picture the fundamental plan of operation seems clearly to be one of joint expenditure with 'a division of the reckoning' among the Members. * * *

I do not believe it was the intention of Congress to treat payments to a bona-fide club for the limited purpose of meeting its expenses, as are the payments in this case, operating cooperatively throughout a period of years in a recognized and approved field of activity, as admission charges, as that term is generally and commonly understood.

"The payments in question, being held to be 'dues' to a club, which is not a social, athletic, or sporting club or organization within the provisions of § 1710(a) (1) Internal Revenue Code, are accordingly not taxable either as 'admission charges' or 'dues'. * * *".

■ What Judge Miller said so persuasively in proceeding to his decision need not be repeated or paraphrased here. It is enough to observe that this court agrees with his reasoning and holds it to be applicable in the instant case. Doing which, it rejects the attempt of defendant in its brief to distinguish the Louisville Club case from that of the plaintiff.

This court's concurrence in Judge Miller's view that receipts of the sort involved in the present case are dues within the proper understanding and definition of that term is not the sole or controlling ground of the decision now announced. What does control that decision is the finding that they are not amounts paid for admission to a place. If they fail to meet that test of taxability it is not imperative that the court exactly and correctly classify them under some other category of taxation. Strangely enough, there may be items that, as yet, simply are not taxed.

The argument of defendant to the contrary notwithstanding, what plaintiff received from its members were initiation fees and annual dues, correctly and exactly so denominated. They were collected, paid and actually used to enable it to defray its administrative expenses and to provide for the broad educational and cultural efforts which inspired plaintiff's organization and still prompt its maintenance. And not far from one-fourth of its revenues was required for the former of those purposes. The plaintiff, in a sense is a voluntary instrumentality through which many persons sharing a desire to promote their own and their community's cultural standards unite to accomplish that objective; and the initiation fees and annual dues simply provide the financial means whereby they may achieve it.

The simple truth is that, despite the right of members of plaintiff to attend its dinner meetings, there is no direct connection between a member's annual dues and his attendance at such dinners. It may be repeated that what is paid for actual attendance at those meetings is the plate by plate charge for the meals exacted by Cornhusker hotel. And the entire amount so paid is delivered to and kept by the hotel. Moreover, as has already been made clear, the number of members in good standing and paying dues is not at any time the measure of the attendance at any dinner meeting or meetings. A member, at his election, may not attend at all or may attend only occasionally. On a year round basis, about one-half of them do not attend. But, more to the point, through the right of members to invite guests and their wives, a single membership may be the support for the attendance at a dinner meeting of an altogether indefinite number of people. And it is to be remembered that membership also accords to one who holds it the right to attend dinner meetings of affiliated clubs wherever located. The dues, in short, provide for many things, of which the privilege of attending local dinner meetings, upon paying the charges therefor is only one, though an important one.

Here also, as in the other reported cases, the benefits and advantages accruing to members are not limited to the right to attend the dinner meetings of the local club. The more salient of those other benefits and advantages have already been mentioned and will not be

repeated. They are not susceptible of exact evaluation in the manner of cost accounting, but they are not on that account valueless or even inconsiderable; and they undoubtedly accrue to the individual members in accordance with, and in proportion to, their respective tastes and capacities for their enjoyment. One member may derive advantage from the club almost entirely from the speeches delivered at the meetings, another from his fellowship with kindred spirits either at the meetings or on other occasions and at other places inspired by common club membership, and still another from the satisfaction that comes to him from his contribution to an elevating activity. And, undoubtedly, some may acknowledge that their reward for membership is rooted principally in the consumption of a good meal.

The court concludes, therefore, that the fees and dues collected by plaintiff were not and are not taxable as payments for admission to a place. It follows that the taxes paid on that basis were wrongfully collected and paid and that plaintiff is entitled to recover them with interest. Judgment will be entered accordingly.

Counsel for plaintiff will forthwith prepare and submit to counsel for defendant, for approval as to form or for suggested revision or alteration, a judgment in accordance with this announcement to speak and be effective not as of this date but as of the date of its signature and filing; and if the same be approved will promptly submit it to the writer hereof for entry. If objection be tendered or suggestion of revision or alteration be made, it shall be tendered in writing and will be settled on notice. It will be observed that interest is not computed in the findings herein made. That may and will be done by counsel, with the understanding that if differences concerning it should arise between them they will be settled by the court.

The clerk will promptly transmit copies of this memorandum by United States mail to counsel in the case.